E-FILED
Monday, 28 January, 2019  10:41:55 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **GIRALDO ROSALES, an individual;** | ) | |
| **MELVIN BOATNER, an individual;** | ) | |
| **ADRIAN FLOWERS, an individual; and** | ) | Case No. |
| **FRANK MCCURRY, an individual;** | ) | |
| | ) | Judge: |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **UNIVERSITY OF ILLINOIS; TRUSTEES** | ) | |
| **OF THE UNIVERSITY OF ILLINOIS; and** | ) | |
| **MAUREEN BANKS, in her official capacity;** | ) | |
| **HEIDI JOHNSON, in her official capacity;** | ) | **TRIAL BY JURY DEMANDED** |
| **CHAD GARRETT, in his official capacity;** | ) | |
| **and MARK BARCUS, in his official** | ) | |
| **capacity.** | ) | |
| | ) | |
| **Defendants** | ) | |

## COMPLAINT

### INTRODUCTION

Plaintiffs, Girardo Rosales, Melvin Boatner, Adrian Flowers, and Frank McCurry, pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et seq.*, 42 USC § 1983, and the Illinois Civil Rights Act, 740 ILCS 23/ *et seq*., complain against the Defendants, the University of Illinois, the Trustees of the University of Illinois, Maureen Bank, Heidi Johnson, Chad Garrett, and Mark Barcus and allege as follows:

**NATURE OF THE CASE**

1.     This case arises from the discriminatory conduct of the University Defendants and

their agents in the Department of Facilities & Services, the Office of Diversity,

Equity and Access, and throughout their human resources operation.

2.     Plaintiffs bring claims pursuant to the Civil Rights Act, 42 USC Section 2000(e) *et*

*seq*., known as Title VII, 42 USC § 1983, and the Illinois Civil Rights Act, 740 ILCS

23/ *et seq*., for violations of their civil rights against discriminatory conduct based on

race, color and national origin, as applicable, retaliation for opposition to

discriminatory conduct, and disparate treatment in terms of promotions.

3.     Plaintiffs are all long-term employees of Defendant University who, due to their race,

were retaliated against for engaging in protected activity, denied opportunities for

promotion, and/or denied pay raises and training as a result of which they suffered a

loss of income, esteem, and suffered from severe emotional distress.

4.     Plaintiffs expressed opposition to Defendant University's and its agents'

discriminatory conduct and practices, for which they suffered retaliation in the form

of materially adverse employment conditions including negative performance

evaluations connected to denial of raises and promotions, discharge, denied

promotions and upgrades, and hostile conduct.

---

5.    All the Plaintiffs named herein have brought actions for violation of their civil rights in the form of a separate hostile work environment class claim being prosecuted separately in this judicial district.

## JURISDICTION AND VENUE

6.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(a)(4), and § 1983.

7.    Subject matter jurisdiction of this Court is invoked over Plaintiffs' claims pursuant to Title VII of the Civil Rights act of 1964, 42 U.S.C. 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1983 ("§ 1983"), and pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4) and supplemental jurisdiction of the Illinois Civil Rights Act ("ICRA") claims pursuant to 28 USC § 1367.

8.    Venue is proper under 28 USC § 1391 because the acts complained of by Plaintiffs occurred within this judicial district and because the Defendants conduct their principal places of business within this district.

9.    Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 8.

## PROCEDURAL HISTORY

10.   Plaintiffs timely filed charges with the Equal Employment Opportunity Commission ("EEOC") relating to the relevant counts under Title VII, and were issued notices of right to sue ("NORTS").

11.    Plaintiff Boatner filed charges with the EEOC on May 17, 2017, amending a complaint from June 19, 2015. All allegations of the charges are incorporated by reference hereto.

12.    Plaintiff Flowers filed charges with the EEOC on May 15, 2017. All allegations of the charges are incorporated by reference hereto.

13.    Plaintiff McCurry filed charges with the EEOC on May 17, 2017. All allegations of the charges are incorporated by reference hereto.

14.    Plaintiff Rosales filed charges with the EEOC on May 18, 2017. All allegations of the charges are incorporated by reference hereto.

15.    On August 21, 2017, the Parties entered into a tolling agreement ("the Tolling Agreement") which tolled all applicable statutes of limitations and filing requirements with respect to disparate treatment and retaliation claims.

16.    The Tolling Agreement continues through and includes January 29, 2019.

17.    This complaint is timely filed.

18.    True and correct copies of the relevant EEOC charges are attached hereto as EXHIBIT "A."

**PARTIES**

19.     Giraldo Rosales was a twenty-year employee of the University of Illinois, working in various capacities. At the times relevant to this complaint, he worked for the Defendant University's Office of Diversity, Equity and Access ("ODEA").

20.     Mr. Rosales is no longer employed by the University and is a resident of Illinois, within the Central District.

21.     Mr. Rosales is Black, of Cuban national origin.

22.     Melvin Boatner has worked for Defendant University for twenty-eight years in various capacities. At the times relevant to this complaint, Mr. Boatner worked in various human resources capacity, most recently as Associate Director of Human Resources in the Facilities & Services Department.

23.     Mr. Boatner is a resident of Indiana, and has worked continuously at the University for approximately twenty years.

24.     Mr. Boatner is African-American.

25.     Adrian Flowers at times relevant worked for the Facilities and Services Department as a groundskeeper, for Defendant University for over a decade.

26.     Mr. Flowers is African-American.

27.     Frank McCurry has worked as a Carpenter for the Defendant University's building services-related departments, for over a decade.

28.     Mr. McCurry is African-American.

29.  Defendant University of Illinois at Urbana-Champaign is a public university located within the Central District of Illinois, a unit of state government and an employer for purposes of Title VII of the Civil Rights Act.

30.  Defendant Trustees of the University of Illinois at Urbana-Champaign are the elected officials responsible for governance and administration of the University.

31.  Defendant Maureen Banks was Plaintiff Melvin Boatner's supervisor and at the time the Safety Director for Mr. Boatner's department.

32.  Defendant Heidi Johnson was Plaintiff Giraldo Rosales's supervisor at times relevant to this complaint.

33.  Defendant Chad Garrett was Adrian Flowers supervisor at times relevant to this complaint.

34.  Defendant Mark Barcus was Plaintiff Frank McCurry's supervisor at times relevant to this complaint.

35.  All Plaintiffs are or were employees of University as defined by Title VII of the Civil Rights Act.

## STATEMENT OF FACTS

36.     The University of Illinois at Urbana-Champaign ("UIUC"; "the University";

"University Defendants") is a large public university with thousands of employees

located primarily in Urbana and Champaign, Illinois.

37.     UIUC as a public university and public employer has employees that are variously

defined as civil service workers, academic professionals, unionized employees and at-

will employees.

38.     Civil service workers are covered by state and university policies regarding hiring and

promotion, requiring employees to take and score high or at the top on civil service

exams to qualify for promotions, pay rises, and upgrades.

39.     Within the policy parlance of the University, employees could qualify for promotions

or "upgrades," which entailed being eligible to take on temporary responsibility for

supervisory authority, including higher pay. "Upgrades" therefore constituted a form

of promotion.

40.     For all Plaintiffs, including those covered by collective bargaining agreements,

eligibility and selection for promotions and upgrades was determined at least in part

by their supervisors subjective impressions and reports about Plaintiffs' work.

41.     Academic Professionals, such as Plaintiff Rosales, are not covered by civil service

rules or a collective bargaining agreement, and particularly subject to the subjective

judgment of their supervisors when pay rises, upgrades and promotions are being considered.

42. The University's Office of Diversity, Equity and Access ("ODEA"), now called the Office of Access and Equity, is responsible for developing the University's policies and practices for faculty diversity and access to leadership, training, and University resources. The ODEA also had responsibility for enforcing the University's affirmative action hiring, promoting and discipline procedures, including investigation of claims of discriminatory conduct.

43. The University's Human Resources department is divided into two parts, one dealing with faculty ("Academic Human Resources") and one dealing with civil services staff ("Staff Human Resources").

44. Some of the larger units of organization within the University, including Facilities & Services, maintain their own Employee Relations/Human Resources and Payroll offices.

45. The University's Facilities & Services Department is responsible for the University's various maintenance, repair, and physical facilities upkeep functions on its Champaign/Urbana campus.

46. Throughout the period of at least 2007 to present, Plaintiffs have worked in a hostile work environment, for which a separate action has been filed in this judicial district.

47.     The work environment in the Office of Diversity, Equity and Access and the
        Facilities & Services Department was consistently hostile for African-American and
        Black employees. Several employees, including Plaintiffs, experienced consistent
        discrimination based on race and color, and in the case of Plaintiff Rosales, race,
        color, and national origin.

48.     When employees, including Plaintiffs, raised concerns, opposition, and took formal
        steps to engage in protected activity to halt the discriminatory behavior at the
        University, they suffered from retaliation in the form of adverse employment actions.

49.     This pervasive atmosphere of racial discrimination also took the form of persistent
        failure of the University to give promotions and temporary promotions (i.e.,
        "upgrades") to Black and African-American employees, failure to train, failure to
        offer merit raises, and through diminished work responsibilities.


        Giraldo Rosales

50.     Plaintiff Giraldo Rosales was hired by the University twenty eight years ago, in 1990,
        classified as an Academic Professional.

51.     Academic Professionals are non-union and work on annual contracts renewed prior to
        the Fall Semester and extended until the next Fall semester.

52.     Academic professionals are not protected by collective bargaining agreements and are evaluated, promoted, given raises, and otherwise disciplined based on a subjective merit system that turns on their immediate supervisor's opinions

53.     In the course of his employment, Mr. Rosales held numerous job titles including serving as the director of La Casa Cultural Latina, a programming unit at the university responsible for developing educational, cultural, socio-political, and social engagement across the campus, with a focus on recruitment, retention within the Latina/o campus-wide population.

54.     For twenty-seven years, he was on an annual contract that was renewed in the late summer of each year for another year.

55.     In 2014, Mr. Rosales was passed over for promotion to Senior Assistant Dean of Students, and three white workers were promoted in title or received salary increases.

56.     In response, Mr. Rosales filed an EEOC charge in 2014 complaining of racial discrimination and retaliation. Subsequent to this complaint, between 2014 and May 2017, Mr. Rosales made several complaints to human resources and University leadership regarding the racially discriminatory treatment he faced as well as the atmosphere of racial discrimination at the University.

57.     Subsequent to his EEOC charges, Heidi Johnson began to give Mr. Rosales negative performance reviews, which within his role as an Academic Professional, impacted his ability to secure merit raises and promotions.

58.     The criticisms Mr. Rosales was given by his supervisor, Heidi Johnson, were racially and ethnically discriminatory, including that his supervisor couldn't "understand" him, that his demeanor was overly demonstrative.

59.     Mr. Rosales was subsequently moved to the Office of the Dean of Students under Dean Ballom, as an assistant dean to Office of Diversity, Equity and Access under Heidi Johnson as an assistant director.

60.      Heidi Johnson, at all times relevant hereto Mr. Rosales's supervisor, made numerous comments showing racial animus.

61.     For example, Defendant Johnson criticized Mr. Rosales for being overly demonstrative in his manner of speech, questioned his ability to relate to the "majority population" of the university, i.e., the majority white student body and employees, and characterized him as "aggressive."

62.     Mr. Rosales began to be excluded by Heidi Johnson from critical training programs, which contributed to negative performance reviews. White coworkers were not denied access to these training programs.

63.    For example, Mr. Rosales was denied the opportunity to attend a training regarding
       on affirmative action procedures, and in his August 2017 performance review was
       rated "not acceptable" due to his alleged inability "to demonstrate mastery of the
       affirmative action process to be able to manage good faith efforts and recruitment
       initiatives…"

64.    Mr. Rosales' negative performance reviews impacted his ability to secure subjective
       merit raises. The title changes Mr. Rosales was forced to accept under duress were
       not on a promotion track. Titles with Assistant Dean and Director had upward
       mobility that came with significant salary increases. The demotion title Mr. Rosales
       was given, Coordinator, was the highest level on that title track with no ability to
       increase salary, except for annual merit awards.

65.    In December 2016, Mr. Rosales was demoted from his position as Assistant Director
       of ODEA because of his race (Black) and color (i.e., as an Afro-Cuban Latino).

66.    Also in December, Mr. Rosales was pressured to resign his position, while a white
       colleague with the same title, Tracy Kleparski, was not targeted.

67.    Also in December 2016, Mr. Rosales was denied a promotion based on his race
       and/or color.

68.    Specifically, in December 2016, Mr. Rosales had applied to the position of Assistant
       Director of Facilities & Services, which was nearly identical in job duties and

qualifications to the position of Assistant Director he formerly occupied. The search

was closed after Mr. Rosales applied because ostensibly no suitable candidate was

identified, though Mr. Rosales fit the requirements for the position. This position was

open and closed three times, with Mr. Rosales applying twice, and denied both times.

69.     In March of 2017, Mr. Rosales was denied a merit-based pay increase. This was

predicated in part on negative reviews of his performance that had begun only after

his 2014 EEOC charge.

70.     white colleagues of Mr. Rosales in the same department received merit pay increases

despite equivalent performances.

71.     Mr. Rosales filed a subsequent charge with the EEOC in May 2017, alleging

disparate treatment, disparate promotion practices, and related claims stemming from

racial discrimination and national origin discrimination.

72.     In August of 2018, with no forewarning, Heidi Johnson recommended termination by

not renewing Mr. Rosales's annual contract, amounting to a discharge.

73.     Mr. Rosales was consistently denied promotions and the associated pay predicated on

retaliatory conduct, i.e. poor performance reviews, by his supervisors including Heidi

Johnson.

74.     As a result of Defendant University's conduct, Mr. Rosales suffered from emotional

distress, increased stress, anxiety and depression, which impacted his day-to-day life,

including his home life, and manifested as medical issues for which he had to consult a physician.

Melvin Boatner

75.     Mr. Boatner has been an employee of Defendant University for over 15 years, in the same job title of Associate Director of Employee Relations with responsibility for the Facilities & Services Department.

76.     In his role as a human resources professional, Mr. Boatner has been an advocate for employees facing discriminatory conduct.

77.     Over the last five years in particular, Mr. Boatner has raised concerns regarding incidents of racist harassment and intimidation of employees in the Facilities & Services Department, including employees finding nooses and use of racial slurs.

78.     On or about August 19, 2014, Mr. Boatner submitted a complaint of racial discrimination against his supervisor, Curt Taylor, stemming from a "failed search" incident regarding a Black candidate for an open position, Nicole McCurry.

79.     Mr. Boatner complained of racial animus in the decision to deny Nicole McCurry the position as he had previously promoted to white applicants but was denied the ability to promote Ms. McCurry.

80.     After submitting this complaint, Mr. Boatner was subjected to a string of retaliatory employment actions.

81.     For example, Mr. Boatner was asked by Carl Wegal, Director of Operations, Maintenance and Alterations, to recuse himself from candidate search procedures that involved African-American candidates, where this was not expected of white colleagues evaluating white candidates, and representing a diminution of his work responsibilities.

82.     Mr. Boatner also began to receive reprimands and negative performance reviews. His supervisors, including Eric Smith, pressured him to stop raising complaints to the University leadership.

83.     In February of 2016, Mr. Boatner was passed over for a merit raise, in part due to negative evaluations given subsequent to his complaints of racial discrimination.

84.     In February of 2016 all of Mr. Boatner's colleagues, including all of his white colleagues, received raises.

85.     In January of 2017, Mr. Boatner filed a complaint with University administration complaining of disparate treatment based on racial discrimination.

86.     In February of 2017, Mr. Boatner was given the lowest raise in his department, of 1.5% when 2% was authorized.

87.     In February of 2017, Mr. Boatner received the lowest raise. All of his white colleagues in his department received higher raises.

88.     In May of 2017, Mr. Boatner filed a charge with the EEOC charging racial discrimination in the form of disparate pay, disparate treatment including disparate promotion, a hostile work environment and retaliation.

89.     In August of 2017, Mr. Boatner submitted complaints of the racially discriminatory atmosphere at the University to the University Chancellor.

90.     In August of 2017, Mr. Boatner was given a negative evaluation and letter of expectations threatening termination through non-reappointment if improvement was not seen within 60 days.

91.     In the Fall of 2017, Mr. Boatner's right to work from home on limited days during the week was revoked, representing a materially adverse change in his working conditions.

92.     Also in the Fall of 2018, Mr. Boatner applied for a Director's position in Human Resources.

93.     This Directorship position was to be a newly created position under the Executive Director of Facilities & Services, Mohamed Attala.

94.     For fifteen years, Plaintiff Boatner has performed all of the job duties that would be entailed in this Directorship position.

95.     There were only two applicants: Mr. Boatner and Eric Smith. When it was discovered that Smith was ineligible for the position, the University pulled the job posting, rather than promote Mr. Boatner to this position.

96.     Mr. Boatner suffered a significant loss of potential income as a result of being denied this promotion.

97.     In November of 2017, Mr. Boatner, in a meeting with his supervisor Maureen Banks, suffered from a stroke and collapsed. Maureen Banks, the director of occupational safety and compliance for his department, did not call for help or call for any medical attention and simply sent Mr. Boatner home.

98.     Since at least 2014, Mr. Boatner has been subjected to repeated acts of retaliation intended to create an unworkable environment for him, stemming from his opposition to the racially discriminatory practices of the Defendant University.

99.     As a result of Defendant University's conduct, Mr. Boatner suffered from emotional distress, increased stress, anxiety and depression, which impacted his day-to-day life, including his home life, and manifested as medical issues for which he had to consult a physician.


Adrian Flowers

100.    Mr. Flowers is a civil service worker, specifically a groundskeeper, in the Facilities &
        Services Department from August 2007 to August 2013 and from March 2014 to
        present, in the Grounds Keeping Department.

101.    At all times relevant to this complaint, his supervisor was Chad Garrett.

102.    Beginning in 2007, Mr. Flowers raised explicit concerns with his supervisors and
        Human Resources regarding disparate access to tools and training for Black
        groundskeepers.

103.    In particular, Mr. Flowers opposed the University Defendants' failure to promote
        practices for Black groundskeepers in his unit, by sending complaints to HR.

104.    In April of 2016, Mr. Flowers returned to his desk in the Facilities & Services
        department to find another employee twirling a noose.

105.    Mr. Flowers felt intimidated, humiliated and angry as a result of this incident,
        particularly given the difficult atmosphere for Black employees of the Facilities &
        Services Department.

106.    Mr. Flowers immediately complained about the incident with a notice sent to the
        Human Resources department.

107.    After reporting this incident, Mr. Flowers was denied opportunities at better-paid
        upgrade work and promotions, despite having top civil service exam scores.

108.    These decisions would have been made by Mr. Flowers's supervisor, Chad Garrett.

---

109.    Throughout 2016 and 2017, white colleagues, such as Zach Curl, in the Facilities &

Services Department were given upgrades. Mr. Flowers was denied these

opportunities.

110.    In apparent retaliation for his opposition to these practices, Mr. Flowers was denied

upgrades (variations of promotions) to subforeman and suffered loss in potential pay

increases as a result.

111.    As a result of his opposition to racially discriminatory conduct by Defendants, as well

as his reporting of specific racist incidents in his department, Mr. Flowers was

subjected to ongoing retaliation in the form of denied opportunities for upgrades and

promotions he otherwise would have been given.

112.    As a result of Defendant University's conduct, Mr. Flowers suffered from emotional

distress, increased stress, anxiety and depression, which impacted his day-to-day life,

including his home life and emotional state, and manifested as medical issues for

which he had to consult a therapist and a physician.


Frank McCurry

113.    Mr. McCurry has worked as a carpenter in the Facilities & Services Department at

Defendant University's Champaign campus for approximately twenty years.

114.    Over this period, Mr. McCurry regularly received favorable performance evaluations, including having been employee of the month and employee of the year, and met all of Defendant University's legitimate job performance expectations.

115.    Despite his stellar performance, Mr. McCurry noticed that he along with other Black employees in the Facilities & Services department were not given opportunities for promotion and upgrades, and the associated pay increases, at a rate similar to that of his white colleagues.

116.    In the Spring of 2016, Mr. McCurry made a complaint to Elynn Cole, at that time a Human Resources official, complaining of the lack of equal promotion and upgrade opportunities, along with the associated pay increases.

117.    Neither Cole nor any other officials in the Human Resources Department took any affirmative steps to address Mr. McCurry's opposition to the disparate promotion practices in the Facilities & Services Department.

118.    After his opposition to the Defendant University's discriminatory conduct was made directly to Human Resources, Plaintiff McCurry began to receive negative performance evaluations which were relied upon by Mr. McCurry's supervisors, including Mark Barcus, in denying Mr. McCurry promotions.

119.   During this period, Mr. McCurry's supervisor, Mark Barcus, made no promotions or upgrades of any of Mr. McCurry's Black colleagues for which Mr. Barcus had authority to grant promotions and upgrades.

120.   For example, a white colleague, Jerry Bagwell, was given upgrades to Supervisor position in the late Autumn and winter of 2016/2017. Another white colleague, Casey Clausen, was similarly upgraded during this time period.

121.   After his opposition to the Defendant University's discriminatory conduct was made, one of Mr. McCurry's supervisors, Mark Barcus, began to treat Plaintiff differently, telling him that he "did not know his job," denigrating his knowledge and otherwise targeting him.

122.   Specifically, not long after making his complaint in the Spring of 2016, Mr. McCurry sought the position of Supervisor of Building Maintenance, for which he was qualified as a top scorer and regularly reliable performer with no job performance issues. This decision occurred on or about March 2017.

123.   Defendant University's pattern of giving negative performance reviews only after opposition to prohibited discriminatory conduct was directly related to the denial of Mr. McCurry's application for the Supervisor position, which entailed greater responsibility, esteem and pay.

124.   As a result of Defendant University's conduct, Mr. McCurry suffered from emotional

distress, anxiety, and sleeplessness. It impacted his home life as well, for which he

sought counseling.

125.   Mr. McCurry suffered a significant loss of income as a result of Defendant

University's retaliatory conduct.


**COUNT I, TITLE VII RETALIATION**
Violation of 42 USC 2000(e) *et seq.*, Retaliation, Plaintiffs ROSALES, BOATNER,
FLOWERS, MCCURRY against UNIVERSITY DEFENDANTS

126.   Plaintiffs hereby incorporates paragraphs 1-125 above as re-plead herein.

127.   Plaintiffs engaged in protected activity when they expressly opposed Defendant

University's discriminatory practices, and made charges regarding discriminatory

treatment both to University leadership and to the EEOC.

128.   As a result of their opposition to these discriminatory practices and their participation

in protected activity, Plaintiffs suffered adverse employment actions.

129.   Defendants' response to Plaintiffs' opposition to, and complaints of, Defendants'

proscribed discriminatory practices, served to have a chilling effect to complaints of

discrimination.

130.   Defendants' retaliatory actions of subjecting Plaintiffs to adverse employment actions

violated Title VII of the Civil Rights Act.

131.   As a direct and proximate result of one or more of the above acts of intentional

discrimination on the basis of race and/or national origin, Plaintiffs have sustained

damages equal to lost monetary damages, have suffered substantial embarrassment

and damage to their professional reputation and emotional distress damages, and are

entitled to compensatory damages, as well as attorneys' fees and costs.

132.   The University's unlawful conduct, as alleged above, caused Plaintiffs substantial

damages, including but not limited to: loss of employment, loss of past and future

income and benefits, loss of earning capacity, emotional distress, loss of reputation,

and humiliation and embarrassment. Plaintiffs will continue to suffer these damages

into the future.

WHEREFORE, the Plaintiff prays that this Honorable Court:
   A.  Enter judgment in the Plaintiff's favor and against University
       Defendants for their violations of Title VII; and
   B.  Award the Plaintiff actual damages suffered, including lost wages and
       damages; and
   C.  Award the Plaintiff compensatory damages under Title VII for
       embarrassment, anxiety, humiliation, and emotional distress they have
       suffered;
   D.  Award the Plaintiff prejudgment interest on his damages award; and
   E.  Enjoin the Defendants, their officers, agents, employees and anyone
       acting in concert therewith, from discriminating, harassing and
       retaliating against the plaintiff and retaliating against the plaintiff and
       any employee; and
   F.  Award the Plaintiff his reasonable costs and attorneys' fees; and

      G. Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT II, § 1983 RETALIATION**
Violation of 42 USC § 1983, Retaliation, Plaintiffs ROSALES, BOATNER, FLOWERS, MCCURRY against INDIVIDUAL DEFENDANTS

133.    Plaintiffs hereby incorporates paragraphs 1-125 above as re-plead herein.

134.    Plaintiffs engaged in protected activity when they expressly opposed Defendant University's discriminatory practices, and made charges regarding discriminatory treatment both to University leadership and to the EEOC.

135.    As a result of opposition to these discriminatory practices and participation in protected activity, Plaintiffs suffered adverse employment actions.

136.    Defendants' retaliatory actions of subjecting Plaintiffs to adverse employment actions violated Title Section 1983 of the Civil Rights Act.

137.    Defendants' response to Plaintiffs' opposition to, and complaints of, Defendants' proscribed discriminatory practices, served to have a chilling effect to complaints of discrimination.

138.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment

and damage to their professional reputation and emotional distress damages, and are

entitled to compensatory damages, as well as attorneys' fees and costs.

139.     The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial

damages, including but not limited to: loss of employment, loss of past and future

income and benefits, loss of earning capacity, emotional distress, loss of reputation,

and humiliation and embarrassment. Plaintiffs will continue to suffer these damages

into the future.

WHEREFORE, the Plaintiff prays that this Honorable Court:
A. Enter judgment in the Plaintiff's favor and against University
   Defendants for their violations of § 1983; and
B. Award the Plaintiff actual damages suffered, including lost wages
   and damages; and
C. Award the Plaintiff compensatory damages under § 1983 for
   embarrassment, anxiety, humiliation, and emotional distress they
   have suffered;
D. Award the Plaintiff prejudgment interest on his damages award; and
E. Enjoin the Defendants, their officers, agents, employees and anyone
   acting in concert therewith, from discriminating, harassing and
   retaliating against the plaintiff and retaliating against the plaintiff
   and any employee; and
F. Award the Plaintiff his reasonable costs and attorneys' fees; and
G. Grant the Plaintiff such other and further relief as this Court deems
   equitable and just.


**COUNT III, ILLINOIS CIVIL RIGHTS ACT RETALIATION**
Violation of 740 ILCS 23 *et seq.*, Retaliation, Plaintiffs ROSALES, BOATNER,
FLOWERS, MCCURRY against UNIVERSITY DEFENDANTS

140.    Plaintiffs hereby incorporate paragraphs 1-125 above as re-plead herein.

141.    Plaintiffs engaged in protected activity when they expressly opposed Defendant

University's discriminatory practices, and made charges regarding discriminatory

treatment both to University leadership and to the EEOC.

142.    As a result of this opposition to these discriminatory practices and participation in

protected activity, Plaintiffs suffered adverse employment actions.

143.    Defendants' retaliatory actions of subjecting Plaintiffs to adverse employment actions

violated the Illinois Civil Rights Act.

144.    Defendants' response to Plaintiffs' opposition to, and complaints of, Defendants'

proscribed discriminatory practices, served to have a chilling effect to complaints of

discrimination.

145.    As a direct and proximate result of one or more of the above acts of intentional

discrimination on the basis of race and/or national origin, Plaintiffs have sustained

damages equal to lost monetary damages, have suffered substantial embarrassment

and damage to their professional reputation and emotional distress damages, and are

entitled to compensatory damages, as well as attorneys' fees and costs.

146.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial

damages, including but not limited to: loss of employment, loss of past and future

income and benefits, loss of earning capacity, emotional distress, loss of reputation,

and humiliation and embarrassment. Plaintiffs will continue to suffer these damages

into the future.

WHEREFORE, the Plaintiff prays that this Honorable Court:
A. Enter judgment in the Plaintiff's favor and against University Defendants for their violations of the Illinois Civil Rights Act; and
B. Award the Plaintiff actual damages suffered, including lost wages and damages; and
C. Award the Plaintiff compensatory damages under the Illinois Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;
D. Award the Plaintiff prejudgment interest on his damages award; and
E. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and
F. Award the Plaintiff his reasonable costs and attorneys' fees; and
G. Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT IV
Violation of 42 USC § 2000(e) *et seq.*, Disparate Treatment, Failure to Promote,
Plaintiffs ROSALES, FLOWERS, MCCURRY against UNIVERSITY DEFENDANTS

147.    Plaintiffs hereby incorporates paragraphs 1-125 above as re-plead herein.

148.    University Defendants and their agents discriminated against Plaintiffs in violation of

their rights under Title VII when they failed to promote them because of their race,

color and national origin.

149.    Defendants regularly and in specific instances failed to promote Plaintiffs while promoting similarly situated white colleagues of Plaintiffs, as alleged in the paragraphs above and incorporated herein.

150.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

151.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

WHEREFORE, the Plaintiff prays that this Honorable Court:
  A.      Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Title VII of the Civil Rights Act; and
  B.      Award the Plaintiff actual damages suffered, including lost wages and damages; and
  C.      Award the Plaintiff compensatory damages under Title VII of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;
  D.      Award the Plaintiff prejudgment interest on his damages award; and

E.      Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.      Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT V**

Violation of 42 USC § 1983, Disparate Treatment, Failure to Promote, Plaintiffs
ROSALES, FLOWERS, MCCURRY against INDIVIDUAL DEFENDANTS

152.    Plaintiffs hereby incorporates paragraphs 1-125 above as re-plead herein.

153.    This Count is brought against the University Defendants and the individual defendants in their official capacity.

154.    The University Defendants are a public body and the individual defendants were at all times relevant their employees.

155.    Defendants discriminated against Plaintiffs in violation of their rights under 42 USC § 1983 guaranteeing equal protection under the law when they failed to promote them because of their race, color and national origin.

156.    Defendants regularly and in specific instances failed to promote Plaintiffs while promoting similarly situated white colleagues of Plaintiffs, as alleged in the paragraphs above and incorporated herein.

157.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained

damages equal to lost monetary damages, have suffered substantial embarrassment

and damage to their professional reputation and emotional distress damages, and are

entitled to compensatory damages, as well as attorneys' fees and costs.

158.   The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial

damages, including but not limited to: loss of employment, loss of past and future

income and benefits, loss of earning capacity, emotional distress, loss of reputation,

and humiliation and embarrassment. Plaintiffs will continue to suffer these damages

into the future.

WHEREFORE, the Plaintiff prays that this Honorable Court:
  A.   Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Section 1983 of the Civil Rights Act; and
  B.   Award the Plaintiff actual damages suffered, including lost wages and damages; and
  C.   Award the Plaintiff compensatory damages under Section 1983 of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;
  D.   Award the Plaintiff prejudgment interest on his damages award; and
  E.   Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and
  F.   Award the Plaintiff his reasonable costs and attorneys' fees; and
  G.   Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT VI**
Violation of the Illinois Civil Rights Act, 740 ILCS 23/ *et seq*., Disparate Treatment,
Failure to Promote, Plaintiffs ROSALES, FLOWERS, MCCURRY against
UNIVERSITY DEFENDANTS

159.    Plaintiffs hereby incorporate paragraphs 1-125 above as re-plead herein.

160.    Defendants discriminated against Plaintiffs in violation of their rights under the Illinois Civil Rights Act when they failed to promote them because of their race, color and national origin.

161.    Defendants regularly and in specific instances failed to promote Plaintiffs while promoting similarly situated white colleagues of Plaintiffs, as alleged in the paragraphs above and incorporated herein.

162.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

163.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

    WHEREFORE, the Plaintiffs pray that this Honorable Court:

A.      Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Illinois Civil Rights Act; and
B.      Award the Plaintiff actual damages suffered, including lost wages and damages; and
C.      Award the Plaintiff compensatory damages under the Illinois Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;
D.      Award the Plaintiff prejudgment interest on his damages award; and
E.      Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and
F.      Award the Plaintiff his reasonable costs and attorneys' fees; and
G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.


## COUNT VII

Violation of 42 USC § 2000(e) *et seq.*, Disparate Treatment, Discriminatory Pay Raises, Plaintiffs BOATNER and ROSALES against UNIVERSITY DEFENDANTS

164.    Plaintiffs hereby incorporate paragraphs 1-125 above as re-plead herein.

165.    University Defendants violated Plaintiffs' rights when they discriminated against them in discriminatorily denying them raises.

166.    Similarly situated white colleagues in the same departments received raises and larger raises than Plaintiffs despite equivalent performance.

167.    University Defendants denial of raises to the Plaintiffs were discriminatory in nature.

168.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment

and damage to their professional reputation and emotional distress damages, and are

entitled to compensatory damages, as well as attorneys' fees and costs.

169.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial

damages, including but not limited to: loss of employment, loss of past and future

income and benefits, loss of earning capacity, emotional distress, loss of reputation,

and humiliation and embarrassment. Plaintiffs will continue to suffer these damages

into the future.

WHEREFORE, the Plaintiffs prays that this Honorable Court:
    A.    Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Title VII of the Civil Rights Act; and
    B.    Award the Plaintiff actual damages suffered, including lost wages and damages; and
    C.    Award the Plaintiff compensatory damages under Title VII of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;
    D.    Award the Plaintiff prejudgment interest on his damages award; and
    E.    Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and
    F.    Award the Plaintiff his reasonable costs and attorneys' fees; and
G.    Grant the Plaintiff such other and further relief as this Court deems equitable and just.

### COUNT VIII
Violation of 42 USC § 1983, Disparate Treatment, Discriminatory Pay Raises, Plaintiffs BOATNER and ROSALES against ALL DEFENDANTS

170.    Plaintiffs hereby incorporates paragraphs 1-125 above as re-plead herein.

171.  University Defendants violated Plaintiff's rights under 42 USC Section 1983 when they discriminated against them in denying them raises.

172.  Similarly situated white colleagues in the same department received raises and larger raises than Plaintiffs despite equivalent performance. University Defendants denial of raises to Plaintiffs were discriminatory in nature.

173.  As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

174.  The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

WHEREFORE, the Plaintiff prays that this Honorable Court:
    A.    Enter judgment in the Plaintiff's favor and against University Defendants for their violations of § 1983 of the Civil Rights Act; and
    B.    Award the Plaintiff actual damages suffered, including lost wages and damages; and

---

C.    Award the Plaintiff compensatory damages under § 1983 of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.    Award the Plaintiff prejudgment interest on his damages award; and

E.    Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.    Award the Plaintiff his reasonable costs and attorneys' fees; and

G.    Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT IX

Violation of the Illinois Civil Rights Act, Disparate Treatment, Discriminatory Pay Raises, Plaintiffs BOATNER and ROSALES against UNIVERSITY DEFENDANTS

175.    Plaintiffs hereby incorporates paragraphs 1-125 above as re-plead herein.

176.    University Defendants violated Plaintiff's rights when they discriminated against them in denying them raises.

177.    Similarly situated white colleagues in the same department received raises and larger raises than Plaintiffs despite equivalent performance.

178.    University Defendants denial of raises to Plaintiffs were discriminatory in nature.

179.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, has suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

180.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial

damages, including but not limited to: loss of employment, loss of past and future

income and benefits, loss of earning capacity, emotional distress, loss of reputation,

and humiliation and embarrassment. Plaintiffs will continue to suffer these damages

into the future.

WHEREFORE, the Plaintiff prays that this Honorable Court:
      A.     Enter judgment in the Plaintiff's favor and against University Defendants for their violations of the Illinois Civil Rights Act; and
      B.     Award the Plaintiff actual damages suffered, including lost wages and damages; and
      C.     Award the Plaintiff compensatory damages under the Illinois Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;
      D.     Award the Plaintiff prejudgment interest on his damages award; and
      E.     Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and
      F.     Award the Plaintiff his reasonable costs and attorneys' fees; and
  G.     Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT X
Violation of 42 USC § 2000(e) *et seq.*, Failure to Train, Plaintiff ROSALES against
UNIVERSITY DEFENDANTS

181.    Plaintiffs hereby incorporates paragraphs 1-125 above as re-plead herein.

182.    University Defendants and their agents discriminated against Plaintiffs in violation of

his rights under 42 USC § 2000(e) when they failed to train him because of his race,

color and national origin.

---

**PLAINTIFFS' COMPLAINT**

183.    Similarly situated white colleagues in Plaintiff's department received the trainings that Plaintiff was denied.

184.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial embarrassment and damage to his professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

185.    The Defendants' unlawful conduct, as alleged above, caused Plaintiff substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages into the future.

    WHEREFORE, the Plaintiff prays that this Honorable Court:
        A.      Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Title VII of the Civil Rights Act; and
        B.      Award the Plaintiff actual damages suffered, including lost wages and damages; and
        C.      Award the Plaintiff compensatory damages under Title VII of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;
        D.      Award the Plaintiff prejudgment interest on his damages award; and

---

E.      Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.      Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**PLAINTIFFS DEMAND TRIAL BY JURY PURSUANT TO FED. R. CIV. P. 8**

Respectfully submitted by and through their attorneys,


___/s/Ramsin Canon_____
Ramsin G. Canon, Esq.
Canon Law Group, P.C.
IL State Bar #: 6319074
18 S Michigan Ave, FL 12
Chicago, IL 60603
Direct: 312-625-9199
ramsin@canonlawgroup.com

---

PLAINTIFFS' COMPLAINT