E-FILED
Monday, 20 May, 2019  11:18:26 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| GIRALDO ROSALES, MELVIN BOATNER, ADRIAN FLOWERS, and FRANK MCCURRY,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF ILLINOIS, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, HEIDI JOHNSON, MAUREEN BANKS, CHAD GARRETT and MARK BARCUS,<br><br>Defendants. | Case No. 2:19-cv-02021<br><br>The Honorable Colin Stirling Bruce |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS UNDER FRCP 12(B)(1) AND 12(B)(6)

Dated: May 20, 2019

Respectfully Submitted,

**DEFENDANTS THE UNIVERSITY OF ILLINOIS, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, HEIDI JOHNSON, MAUREEN BANKS, CHAD GARRETT AND MARK BARCUS**

By:   s/ Christopher B. Wilson
        One of Its Attorneys

Christopher B. Wilson
Jon R. Buck
Christopher Lepore
PERKINS COIE LLP
131 S. Dearborn; Suite 1700
Chicago, IL 60603
Tel: (312) 324-8400
Fax: (312) 324-9400
CWilson@perkinscoie.com
JBuck@perkinscoie.com
CLepore@perkinscoie.com

Despite the considerable length of Plaintiffs' 45-page First Amended Complaint (the "Complaint"), Plaintiffs still fail to establish a proper legal basis for any of their discrimination or retaliation claims against the University[1] or the various employees of the University that Plaintiffs named as defendants (the "Individual Defendants").  Plaintiffs' claims span multiple statutes (Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Act of 1871 ("Section 1983"), and the Illinois Civil Rights Act ("ICRA")), and theories of relief (retaliation; failure to promote; "discriminatory pay raises"; failure to train), but certain fundamental deficiencies run throughout.  Plaintiffs fail to assert a claim for relief as a matter of fact or law.

As a matter of law, a significant number of Plaintiffs' claims can and should be rejected based on established legal doctrines.  These include the doctrine of sovereign immunity and the Plaintiffs' failure to adequately plead that the Individual Defendants were personally involved in any alleged deprivation of a constitutional right, which bar each of Plaintiffs' claims under Section 1983.  This immunity and pleading deficiency warrant dismissal of Count II (retaliation), Count V (disparate treatment, failure to promote), and Count VIII (disparate treatment, discriminatory pay raises).  Certain other claims or portions thereof, must be dismissed because Plaintiffs have failed to pursue, let alone exhaust, their administrative remedies.  These include Plaintiff Rosales' "failure-to-train" claim (Count X), which was not included in previous EEOC charges.  As the Court is well aware, a Title VII plaintiff may not include in a civil complaint claims that were not previously part of an EEOC charge.

Plaintiffs' Complaint also sets forth facts that doom their claims.  For example, Plaintiffs allegations concerning their claims for retaliation in Counts I, II, and III allege disparate

---

[1] Plaintiffs' Complaint improperly refers to both "the University of Illinois" and the "The Board of Trustees of the University of Illinois."  The appropriate legal entity is "The Board of Trustees of the University of Illinois."  This Memorandum will refer to that legal entity as the "University" for purposes of this argument.

incidents years apart.  To the extent protected activity and allegedly adverse actions are alleged with any specificity, Plaintiffs concede gaps of a year or more between the two events and cannot provide any causal nexus between the protected activity and the allegedly adverse actions on which claims are based.  Accordingly, these claims are insufficient as a matter of law.

Indeed, the majority of Defendants' alleged retaliation claims are based on nothing more than Plaintiffs' occasional failure to receive unspecified, temporary "upgrades," which under the law does not constitute an adverse action upon which a discrimination claim can be based.  For all of these reasons, and as described more fully below, Plaintiffs' Complaint is deficient on its face and should be dismissed in its entirety.

## I.    <u>RELEVANT ALLEGATIONS</u>

Plaintiffs Rosales, Boatner, Flowers and McCurry are current and former employees of the University of Illinois.  (Compl. ¶¶ 3, 21, 24, 27, 29.)  Each of these four Plaintiffs assert retaliation claims under Title VII, Section 1983, and the ICRA.  Under those same statutes, Plaintiffs Rosales, Flowers and McCurry allege the University discriminatorily failed to promote them, while Plaintiffs Boatner and Rosales claim they received "discriminatory pay raises." Plaintiff Rosales also alleges he was denied training opportunities in violation of Title VII against the University.  Because Plaintiffs' claims move among various statutes with varying Plaintiffs participating in each count, Defendants provide the following table of Plaintiffs claims for the Court's convenience:[2]

---

[2] Plaintiffs have confused matters further by naming different Defendants in each claim. Plaintiffs assert their Title VII (Counts I, IV, and VII) and ICRA claims (Counts, III, VI, and IX) against the University of Illinois and the Board of Trustees of the University of Illinois; and their Section 1983 Claims (Counts II, V) against the Individual Defendants in their individual capacities, except for Count VIII, which is asserted against all Defendants.

| Count | Plaintiffs | Statute | Description |
|-------|-----------|---------|-------------|
| I | All | Title VII | Retaliation |
| II | All | § 1983 | Retaliation |
| III | All | ICRA | Retaliation |
| IV | Rosales, Flowers, McCurry | Title VII | Disparate Treatment (Promotion) |
| V | Rosales, Flowers, McCurry | § 1983 | Disparate Treatment (Promotion) |
| VI | Rosales, Flowers, McCurry | ICRA | Disparate Treatment (Promotion) |
| VII | Boatner, Rosales | Title VII | Disparate Treatment (Pay Raises) |
| VIII | Boatner, Rosales | § 1983 | Disparate Treatment (Pay Raises) |
| IX | Boatner, Rosales | ICRA | Disparate Treatment (Pay Raises) |
| X | Rosales | Title VII | Failure to Train |

Because the factual allegations, however, are even more confusing, this Memorandum will describe the factual allegations in the following summary:

**1.     Plaintiff Rosales.**

Plaintiff Rosales worked, at relevant times, in "various capacities" in the University's Office of Diversity Equity and Access ("ODEA").   (Compl. ¶ 19.)   Heidi Johnson was his supervisor.  (Compl. ¶ 34.)

Rosales admits he received a negative performance review in August 2017 because he was unable "to demonstrate mastery of the affirmative action process to be able to manage good faith efforts and recruitment initiatives."  (Compl. ¶ 79.)

**a.  Alleged Retaliation.**

Rosales alleges he made EEOC filings in 2014 and May 2017.  (Compl. ¶¶ 58, 72.) However, Rosales fails to identify any specific instance when he engaged in protected activity

outside of those filings.  Instead, Rosales alleges in conclusory fashion that he made "several" complaints of discrimination from 2014 to 2017.  (Compl. ¶ 64.)  But he largely provides no details about these purported complaints, such as what he specifically contested, when he complained or to whom.   Apart from conclusory allegations, Rosales identifies only two complaints with specificity.  On January 20, 2017, Rosales asserts that he complained in writing of generalized "discrimination" (without specifying, among other things, the basis of that alleged discrimination), unspecified "forms of retaliation" and other unidentified conduct that supposedly violated University policy.  (Compl. ¶ 67.)  He also allegedly expressed disagreement with his August 2017 performance review (again, without specifying any unlawful conduct) in a letter to the University's chancellor in August 2017.  (Compl. ¶ 88.)

The adverse employment actions challenged by Rosales are also scantily alleged.  He alleges he failed to receive a promotion in December 2016 to a position for which he freely admits no one was hired; a "demotion" at that same time; and the denial of a raise in March 2017.  These events occurred more than two years after his 2014 EEOC charge and before his May 2017 EEOC charge.  (Compl. ¶¶ 59, 60, 62.)  Rosales also claims, around the time he was given a negative performance review in August 2017, Johnson recommended that his annual contract not be renewed in August 2018.  (Compl. ¶¶ 79, 87.)  Rosales does not claim his employment ended at this time, but rather that he remained employed despite being somehow, at the same time, "constructively discharged." (Compl. ¶ 87.)  This allegation directly contradicts Rosales' account in his original complaint, which claimed that the University chose not to renew

Rosales's annual contract without notice or warning in 2018.  (Dkt. #1, Original Compl. ¶ 72.).[3]

### b.  Alleged Failure to Promote, Discriminatory Pay Raises and Failure to Train.

As purported evidence of discrimination, Rosales cites several facially neutral comments allegedly made by Johnson—namely, that on two unspecified occasions Johnson told Rosales "his supervisor could not understand him" and warned him that "his demeanor was overly demonstrative."  (Compl. ¶ 75.)  Johnson also purportedly told Rosales he was "aggressive" and unable to relate to the "majority population."  (Compl. ¶ 76.)  Yet Rosales is only able to speculate as, in conclusory fashion, that Johnson "would have been" responsible for his alleged promotions or pay raises.  (Compl. ¶ 60, 61.)  Rosales generally claims his white colleagues were treated better than him, but he only provides one specific comparison to a white colleague. (Compl. ¶ 57, 60.)  In explaining that example, Rosales effectively admits that he voluntarily accepted a new position while a white colleague, Tracy Kleparski, did not.  (Compl. ¶ 60.) Rosales does not provide any details regarding Ms. Kleparski, except that she had the same title as him at the time, and in his subjective assessment, had the "same … performance record."  Nor does he offer any information for the other unidentified white colleagues referenced in the Complaint.

Lastly, although Rosales claims that the University Defendants and Johnson denied him training opportunities, he never mentioned any such failures in his EEOC charge.  (Compl., Ex. A.)  Rosales also did not once mention his supervisor, Heidi Johnson, in the charge.  (*See id*.) Indeed, as relevant here, Rosales only cited two purported adverse actions in this EEOC charge:

---

[3] Courts have disregarded a plaintiff's intentional manipulation of factual allegations to avoid a defendant's motion to dismiss.  *See Aasen v. DRM, Inc.,* 2010 WL 2698296, at *2 (N.D. Ill July 8, 2010) (noting a court may disregard contradictory allegations asserted in response to a motion to dismiss and that "[a] party may plead itself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") (internal citations omitted).

(i) the denial of his promotion in December 2016; and (ii) his failure to receive a raise in March 2017.[4] (*See id*.)

## 2. Plaintiff Boatner.

Plaintiff Boatner alleges he "worked in various human resources capacity [sic]"—most recently, as Associate Director of Human Resources in the Facilities & Services Department. (Compl. ¶ 24.)  He was supervised by Maureen Banks at relevant times. (Compl. ¶ 33.)

### a. Alleged Retaliation and Discriminatory Pay Raises.

Boatner claims he complained of discrimination on August 19, 2014 to advocate for a colleague.  (Compl. ¶¶ 98-99.)  Boatner then claims that this advocacy was the reason for his failure to receive a raise in February 2016, a year and a half later.  (Compl. ¶ 102.)

Boatner asserts he later "filed a complaint with University administration complaining of disparate treatment based on racial discrimination" in January 2017.  (Compl. ¶ 103.)  That same month, Boatner claims he received a raise "1.5% when 2% was authorized," and that this was the lowest in the department.  (Compl. ¶ 104.)

Notably, Boatner's May 2017 EEOC charge does not specifically identify any purported instance when he engaged in protected activity or even any adverse employment action to which he was subjected.  Boatner's EEOC charge also does not identify any individuals involved in the decision to allegedly deny him a pay raise.

In an apparent effort to demonstrate his failure to receive pay raises was the product of retaliation or discrimination, Boatner cites two undated examples of purported retaliatory or racial animus.  First, Boatner alleges that Carl Wegal, Director of Operations, Maintenance and Alterations, asked him to recuse himself from "candidate search procedures that involved

---

[4] Rosales did not, contrary to his claims, "amend" his 2014 EEOC charge in 2017.  Rosales' charge in 2017 was filed as a separate charge.

African Americans," and, second, that Eric Smith, a supervisor, "asked him 'where he was going to work' if he 'continued to complain.'"  (Compl. ¶¶ 101-113.)  But these individuals are not alleged to have had any involvement with any adverse action at issue in the litigation.

Further, to the extent any allegations that post-date Boatner's EEOC charge should be considered, Boatner avers that Maureen Banks gave him a negative performance review in August 2017, and at that same time, revoked his ability to work from home.  (Compl. ¶¶ 109-110.)  Boatner subsequently expressed his disagreement with this evaluation in a letter to the University's chancellor in August 2017, though apparently not for reasons related to alleged discrimination, retaliation or other purportedly unlawful conduct.  (Compl. ¶ 111.)  And lastly, Boatner claims that he did not receive a promotion in Fall 2018 due to his May 2017 EEOC charge.  (Compl. ¶¶ 121-124.)

Boatner also takes issue with an incident during which he suffered a stroke and collapsed during a staff meeting at work in 2017.  (Compl. ¶ 115.)  Although Boatner *himself* admits he did not know he was suffering a stroke, he laments that Banks only offered him the opportunity to go home when he collapsed, Smith opined that he seemed lucid, and another supervisor, Helen Coleman, sent her assistant to check on him rather than check on him herself.  (Compl. ¶¶ 116-118.)  According to Boatner, Coleman later "did not believe" Boatner's account of this event. (Compl. ¶ 117.)  Boatner does not claim that any of the above-referenced individuals knew or should have known he was suffering a stroke, much less that their response could in any way be attributed to improper motives.  Nor does Boatner allege Coleman had any involvement in any of the purported adverse actions he incurred.

### 3.    Plaintiff Flowers.

Plaintiff Flowers works for the University as a groundskeeper.  At relevant times, his

supervisor was Chad Garrett.  (Compl. ¶ 27, 129.)

### a.  Alleged Retaliation and Discriminatory Pay Raises.

Flowers alleges that beginning in 2007, he raised concerns "regarding disparate access to tools and training for Black groundskeepers," but does not identify how, when, or to specifically whom he complained.  (Compl. 130.)  The first specific complaint of discrimination identified by Flowers allegedly occurred in April 2016.  (Compl. ¶ 132.)  Flowers then claims that he was given fewer opportunities for "upgrades" in "apparent retaliation for his opposition to these [unspecified] practices," including on unspecified dates in July and October 2016.  (Compl. ¶ 135.)  According to Plaintiffs, "upgrades" meant that employees had eligibility "to take on temporary responsibility for supervisory authority, including higher pay."   (Compl. ¶ 41.)  Neither the Complaint nor EEOC charge identifies a specific upgrade Flowers was denied.

### 4.  Plaintiff McCurry.

Plaintiff McCurry works for the University as a carpenter.  McCurry reports to, among other supervisors, Mark Barcus. (Compl. ¶ 29, 36.)

### a.  Alleged Retaliation, Failure to Promote, and Discriminatory Pay Raises.

McCurry alleges he complained of discrimination in the Spring of 2016.  (Compl. ¶¶ 152.)  According to McCurry, in 2015, he was subsequently denied a promotion and given a negative performance review.  (Compl. ¶¶ 146-150).  McCurry admits he filed an EEOC charge asserting these claims but never received a notice of right to sue.  (Compl. ¶ 150.)  McCurry also claims he was: (i) transferred in 2015; and (ii) denied upgrades while his white colleague received them, but he does not identify any specific upgrade he was denied.  (Compl. ¶ 154.)  The only other allegation McCurry proffers in support of his claim is that Barcus once said he "did not know his job."  (Compl. ¶ 157.)

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the court lacks subject matter jurisdiction.  Federal Rule of Civil Procedure 12(b)(6), in turn, requires dismissal when a complaint fails to allege facts sufficient "to state a claim to relief that is plausible on its face" and presents nothing more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 533, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a court must accept a plaintiff's well-pleaded facts as true, that does not extend to legal conclusions.  *See Porter v. Pipefitters Ass'n Local Union 597, U.A.*, 2013 WL 5162206 at *2 (N.D. Ill. Sept. 12, 2013) (citing to *Iqbal*, 556 U.S. at 677).  "A plaintiff is required to include allegations in the complaint that 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' and 'if they do not, the plaintiff pleads itself out of court.'"  *Shankle v. Vill. of Melrose Park*, No. 16 C 2582, 2018 WL 844422, at *1 (N.D. Ill. Feb. 12, 2018).

Here, Plaintiffs claims fail to state any claim upon which relief can be granted.  Plaintiffs' claims under Section 1983 are barred by the doctrine of sovereign immunity and because Plaintiffs fail to allege any of the Individual Defendants personally deprived them of a constitutional right (Section I); Plaintiffs' claims asserting retaliation fail to establish the "but for" causation required by law (Section II); Plaintiffs' Title VII claims must fail because Plaintiffs have not exhausted their administrative remedies (Section III.A), and because Plaintiffs have alleged facts which destroy the plausibility of such claims in any event (Section III.B); and finally, Plaintiffs' claims under the ICRA fail as a matter of law because the Illinois statute does not extend to Plaintiffs' claims (Section IV).

## ARGUMENT

### I.  PLAINTIFFS' CLAIMS UNDER SECTION 1983 MUST BE DISMISSED (COUNTS II, V AND VIII).

Generally, to state a Section 1983 claim, "[f]irst, the plaintiff must allege that some person has deprived him of a federal right"; and second, "he must allege that the person who has deprived him of that right acted under color of state ... law." *Klean v. The Bd. of Educ. of Proviso Twp. Sch. Dist. No. 209*, No. 08 C 6233, 2009 WL 2496555, at *3 (N.D. Ill. Aug. 12, 2009). "The doctrine of *respondeat superior* does not apply to actions filed under § 1983." *Stanfield v. Dart*, No. 10 C 6569, 2011 WL 1429172, at *3 (N.D. Ill. Apr. 14, 2011). Accordingly, to be held liable under Section 1983, an individual supervisor must be "personally responsible for the deprivation of the constitutional right." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (internal citations omitted). In other words, he or she must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.*

### A.  PLAINTIFFS FAIL TO ADEQUATELY ALLEGE THE INDIVIDUAL DEFENDANTS' PERSONAL INVOLVEMENT IN ANY DEPRIVATION OF A CONSTITUTIONAL RIGHT.

In Section 1983 claims arising from allegations of employment discrimination, a plaintiff must plead a causal connection between an alleged wrongdoer's discriminatory intent and the alleged adverse action at issue. *See Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012). In this regard, "conclusory allegations of the causative link are not sufficient, instead plaintiff must offer 'facts that might plausibly support' the discriminatory intent link." *Stone v. Bd. of Trustees of N. Illinois Univ.*, 38 F. Supp. 3d 935, 948 (N.D. Ill. 2014). Claims under Section 1983 have a statute of limitations of two years in Illinois. *See*

*Ramirez v. City of Chicago*, No. 08 C 5119, 2009 WL 1904416, at *2 (N.D. Ill. July 1, 2009) ("The statute of limitations for Section 1983 claims in Illinois is two years").[5]

Here, no Plaintiff has identified a single display of discriminatory or retaliatory animus on the part of any Individual Defendant. To that end, as noted earlier, the *only* allegation against Defendant Garrett is that he supervised Flowers and "would have" made decisions to deny Flowers "upgrades." Moreover, as to Defendant Barcus, McCurry merely claims he, on some unspecified occasion, told McCurry he "didn't know his job." And according to Rosales, Defendant Johnson, on two unspecified occasions, made facially neutral comments - namely, (1) that she allegedly said she could not "understand" Rosales and observed "his demeanor was overly demonstrative"; and (2) she purportedly "questioned his ability to relate to the 'majority population' of the University" and "characterized him as aggressive." Otherwise, Rosales confusingly claims that Johnson: (i) somehow "would have been" the decision-maker for his own decision to step down from a role for a different position; (ii) did not hire him for a position that he admits was never filled; and (iii) gave him a negative performance review. Finally, Plaintiff Boatner accuses Defendant Banks of twice denying him a raise, giving him a negative performance review and revoking his ability to work from home. Boatner also claims Banks offered him the opportunity to leave work and go home after he collapsed during a staff meeting. None of the facially neutral conduct described establishes any Individual Defendant harbored discriminatory or retaliatory animus toward any Plaintiff. Accordingly, these claims must be dismissed.[6]

---

[5] Accordingly, all conduct before August 21, 2015, two years prior to the tolling agreement between the parties, must be disregarded. (Compl. ¶ 15.)

[6] Moreover, because the Individual Defendants' alleged conduct did not violate a clearly established statutory or constitutional right of any Plaintiff, qualified immunity defeats Plaintiffs' claims. *See Ewell v. Toney*, 853 F.3d 911, 918-920 (7th Cir. 2017).

**B.** **THE DOCTRINE OF SOVEREIGN IMMUNITY BARS SEVERAL OF PLAINTIFFS' CLAIMS.**

The Eleventh Amendment "'guarantees that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" *Freeman v. Univ. of Illinois at Chicago*, No. 17 C 1776, 2018 WL 701282, at *2 (N.D. Ill. Jan. 29, 2018). In Illinois, sovereign immunity is established by statute, the State Lawsuit Immunity Act, which provides "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1. Although the state may waive sovereign immunity, the waiver must be "clear and unequivocal" or "affirmatively declared." *People ex rel. Madigan v. Excavating & Lowboy Servs., Inc.*, 388 Ill. App. 3d 554, 560 (1st Dist. 2009). The state of Illinois, which encompasses its state universities, has not waived sovereign immunity for claims under Section 1983. *See Stoltey v. Clark*, 2006 WL 581027, at *2 (C.D. Ill. 2006) (observing that "a state university is entitled to sovereign immunity and is not subject to suit under Section 1983.").

Here, Plaintiffs improperly attempt to assert Section 1983 claims against the University in Count VIII. *See, e.g., Freeman*, 2018 WL 701282, at *2; *Muhammad v. Moore*, 2014 WL 11394916, at *4 (C.D. Ill. 2014) (University of Illinois "is not a suable entity"); *Cannon v. Univ. of Health Sciences/Chi. Med. Sch.*, 710 F.2d 351, 356 (7th Cir.1983) (The Board of Trustees of the University of Illinois are state agencies with Eleventh Amendment immunity). Accordingly, this claim must be dismissed.

Furthermore, under the doctrine of sovereign immunity, Plaintiffs are barred from suing Individual Defendants in their individual capacity "when the claim is really and substantially against the State." *Tanner v. Bd. of Trustees of Univ. of Illinois*, No. 3:17-CV-3039, 2018 WL 1161140, at *8 (C.D. Ill. Mar. 5, 2018). As applicable here, "[a]n individual capacity lawsuit is substantially against the State when the judgment would result in the judgment being paid by the

State rather than the individual defendants, such as where the plaintiff seeks backpay and other monetary compensation based on an employment contract." *Id*. Therefore, to the extent not dismissed for the reasons above, Plaintiffs' Section 1983 claims against the Individual Defendants for economic damages arising out of their employment must therefore be dismissed as a matter of law.

## II.    PLAINTIFFS DO NOT PLAUSIBLY ALLEGE CLAIMS FOR RETALIATION (COUNTS I, II, and III).[7]

To state a claim for retaliation, Plaintiffs must establish: "1) [they] engaged in protected activity; 2) [they] suffered a materially adverse employment action; and 3) there was a causal link between the protected activity and the adverse action." *Marijan v. Univ. of Chicago*, No. 17-CV-9361, 2018 WL 6604967, at *4 (N.D. Ill. Dec. 17, 2018). Importantly, "[f]ailure to show that a plaintiff suffered an adverse employment action will lead to the dismissal of plaintiff's claims." *Id*. And ultimately, there must also be a non-conclusory causal link alleged between the adverse action and the plaintiff's alleged protected activity. *See id.* (observing, in deciding a motion to dismiss, that plaintiffs "must prove that a 'retaliatory animus' motivated the defendant's adverse action against them"); *Cleaves v. City of Chicago*, 68 F. Supp. 2d 963, 967 (N.D. Ill. 1999); *Straub v. Jewel Food Stores, Inc.*, No. 17 C 6401, 2018 WL 4512060, at *3 (N.D. Ill. Sept. 20, 2018). Unlike discrimination claims under Title VII, which are evaluated under a "motivating factor" standard, retaliation claims require proof of "but-for" causation. *See Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014).

District courts in the Seventh Circuit routinely dismiss Title VII retaliation claims where, as here, a plaintiff alleges he engaged in protected conduct that occurred well before the adverse

---

[7] Courts evaluate §1983 claims for employment discrimination under a similar standard to Title VII claims. *See Fortney v. Stephenson Cty.*, No. 12 C 50282, 2013 WL 1499185, at *2 (N.D. Ill. Apr. 10, 2013).

action in question without any explanation of distant temporal proximity between the two. *See*, *e.g.*, *Lugo v. Int'l Bhd. of Elec. Workers Local # 134*, 175 F.Supp.3d 1026, 1038 (N.D. Ill. 2016) (granting motion to dismiss retaliation claim where one-year gap existed between the plaintiff's protected activity and the alleged retaliation, and the plaintiff did not explain the long delay between the two); *Ghiles v. City of Chicago Heights*, No. 12 CV 07634, 2016 WL 561897, at *2 (N.D. Ill. Feb. 12, 2016) (holding that an unexplained six-month delay between the protected activity and the retaliation was "too remote" to link the two events and establish causation); *Brownlee v. Catholic Charities of the Archdiocese of Chicago*, No. 16-CV-00665, 2017 WL 770997, at *7 (N.D. Ill. Feb. 28, 2017) ("Because the complaint does not explain the delay of at least thirty months between [the protected activity] and the allegedly retaliatory conduct, it does not state a plausible claim of a causal connection based on temporal proximity."); *Marijan* 2018 WL 6604967, at *5 (dismissing when 19-month gap); *Carmody v. Bd. of Trustees of Univ. of Ill.*, 747 F.3d 470, 480 (7th Cir. 2014) (affirming dismissal where three years separated protected activity and the alleged retaliation).

Plaintiffs' allegations similarly often involve extended time periods between any protected activity and the supposed adverse actions Plaintiffs suffered. Rosales, for example, alleges a multi-year gap between his 2014 EEOC Charge and his denials for promotion (and/or demotion) in December 2016 and supposed failure to receive a raise in March 2017. (Compl. ¶¶ 59, 63, 70). Boatner's retaliation claim is based on allegations that he was passed over for a raise in February 2016, 18 months after he complained of discrimination in August 2014, and passed over for a promotion in the fall of 2018 (almost two years after his 2017 EEOC charge). (Compl. ¶¶ 102, 121, 124). "For a retaliation claim inferring causation based on timing, as here, the adverse employment action must follow 'close on the heels of protected expression'—

typically, only a few days later." *Ghiles*, 2016 WL 561897, at *2. In this case, the allegedly protected activity identified by Plaintiffs Rosales and Boatner with specificity is too temporally remote to support their claims of retaliation.[8]

Flowers' and McCurry's allegations are also too conclusory to establish a temporal (or other) connection between their alleged protected and any adverse action, including the vaguely alleged "upgrade" denials they reference in 2016 and 2017. *See Ross v. Univ. of Chicago*, No. 18-CV-4200, 2018 WL 6448464, at *7 (N.D. Ill. Dec. 10, 2018) (dismissing retaliation claim where the causal nexus between a 2013 EEOC charge, later "unspecified" internal complaints and an adverse action were "at best unclear"); *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir. 2015) (upholding grant of motion to dismiss Title VII retaliation claim where it was "impossible to determine" whether temporal proximity supported an inference causation because the plaintiff failed to supply dates of relevant events).[9]

Plaintiffs' recent attempts to bridge the causal gaps in the Complaint fail for a variety of reasons. Rosales, for example, attempts to amend his allegations by emphasizing the three-month temporal proximity between his filing of an EEOC Charge in May 2017 and his receipt of a purportedly negative performance review in August 2017. However, a three-month gap of time, standing alone, is still insufficient to establish a causal nexus between the filing of Rosales's EEOC Charge and his negative performance review. *See McDowell v. N. Shore-Long*

---

[8] Plaintiffs cannot bolster their claims with conclusory claims of "increased scrutiny" and "hostility." *Straub*, 2018 WL 4512060, at *5 (observing, in dismissing retaliation claim, that plaintiff "fails to provide any nonconclusory factual allegations to causally connect his termination and the [protected activity]"); *Harris v. Firstar Bank Milwaukee*, N.A., 97 F. App'x 662, 665 (7th Cir. 2004) ( holding the plaintiff's "retaliation claim fails because the actions of which she complains—intimidating comments, dirty looks, and increased scrutiny by her supervisors—even if true, do not constitute adverse actions by her employer").

[10] Nor do Boatner's attempts to cast his co-workers' innocuous response to his stroke as an adverse action for purposes of his retaliation claim succeed, especially since he admits himself he did not realize the extent of his health issues at the time.

*Island Jewish Health Sys., Inc.*, 788 F. Supp. 2d 78, 83 (E.D.N.Y. 2011) (three-month gap insufficient).  But these allegations also fail for a different reason: a negative performance review does not, as a matter of law, qualify as a material adverse action for purposes of establishing a viable retaliation claim.  *See Davis v. Time Warner Cable of Se. Wisc., L.P.*, 651 F.3d 664, 677 (7th Cir.2011) ("Performance improvement plans . . . are not, without more, adverse employment actions.");  *Volovsek v. Wis. Dep't of Agric. Trade and Consumer Prot.*, 344 F.3d 680, 688 (7th Cir. 2003) ("disputed performance reviews ... do not, themselves, amount to the kind of adverse employment action that constitutes discrimination or retaliation");  *Marijan*, 2018 WL 6604967, at *4 (observing  that "negative performance reviews" do not qualify as material adverse actions).  And Boatner's attempt to bolster his retaliation claim by asserting that, in August 2017, he received a negative performance evaluation and the University revoked his ability to work from home is similarly insufficient.  *See Little v. JB Pritzker for Governor*, No. 18 C 6954, 2019 WL 1505408, at *5 (N.D. Ill. Apr. 5, 2019) ("Conditions of employment such as the denial of telecommuting privileges and assignment to undesirable tasks or work locations fall short of adverse employment actions.").[10]

Furthermore, the few specific instances of allegedly protected activity identified by Plaintiffs do not qualify as such.  Rosales cannot establish that he engaged in protected activity prior to his denial of a raise in March 2017 because he vaguely complained of "mistreatment" and "forms of retaliation, discrimination and [conduct] not according to the University's code of conduct."  Indeed, the only substance Rosales describes in this complaint has nothing to do with discrimination or retaliation: Rosales reported that Johnson "dress[ed] him down in a hallway in front of his colleagues."  The Complaint does not identify purported unlawful conduct under any

---

[10] Nor do Boatner's attempts to cast his co-workers' innocuous response to his stroke as an adverse action for purposes of his retaliation claim succeed, especially since he admits himself he did not realize the extent of his health issues at the time.

applicable anti-discrimination statute.  *See Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013) (observing that "[v]ague and obscure 'complaints' do not constitute protected activity and that the plaintiff's alleged complaints did not qualify as such because they were personal in nature and unrelated her membership in a protected class"); *Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207*, No. 13 C 1706, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 20, 2013) (email complaining about activity not unlawful under the ADEA did not constitute statutorily protected activity under the ADEA.  For the same reasons, Boatner's new allegation that he "express[ed] his concerns" about a negative performance review in August 2018 does not qualify as protected activity.  These allegations simply do not establish Rosales and Boatner's claims of retaliation.

Finally, "[p]recedent confirms that a plaintiff … alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected."  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007)).  But most of Plaintiffs' assertions—other than the few specifically discussed above—do not allege with any specificity what Plaintiffs complained about, when they complained or to whom they complained. *See Ross*, No. 18-CV-4200, 2018 WL 6448464, at *7; *see, e.g.*, Compl. ¶¶ 64, 108, 131.  The lack of specificity in Plaintiffs' retaliation claim allegations provides another, independent basis for dismissal.

### III.    PLAINTIFFS' TITLE VII DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW.

#### A.    PLAINTIFFS HAVE NOT EXHAUSTED ADMINISTRATIVE REMEDIES FOR MANY OF THESE CLAIMS.

It is well established that, prior to filing suit under Title VII, a plaintiff must first file a charge of discrimination with the EEOC or its state equivalent within 300 days of the last alleged act of discrimination.  *See, e.g., Guo v. Nw. Univ.*, No. 10 C 5226, 2011 WL 1882489, at *2 (N.D. Ill. May 17, 2011).  For discrete employment actions, such as a failure to promote or

provide a raise, each employment action at issue must be identified in a charge of discrimination. *See, e.g., id.* (observing, in the context of a failure-to-promote claim (and other discrete employment actions), a plaintiff must allege he "filed a charge with the appropriate state or federal agency for *each alleged failure to promote* within 300 days of its occurrence") (internal citations omitted).  "A Title VII plaintiff generally may not include in her complaint claims that were not in her EEOC charge." *Job v. Illinois Dep't of Human Servs.*, No. CIV.A. 08 C 3838, 2009 WL 255596, at *3 (N.D. Ill. Feb. 2, 2009).

In *Job*, the plaintiff identified one purported unlawful action in her EEOC charge: denial of an unpaid absence but did "not identify any individuals." *Id.*  Yet in her subsequent complaint, the plaintiff nevertheless added claims on the basis that she was "suspended, reassigned and not promoted."  *Id.*  The court dismissed those claims as "not reasonably related to the allegations in her administrative charge."  *Id.*

Here, much like the plaintiff in *Job*, several Plaintiffs improperly include alleged adverse actions they failed to contest at the EEOC.  Flowers and Boatner failed to identify a single adverse action in their EEOC charges, while McCurry: (i) admits that he failed to exhaust his administrative remedies with respect to his alleged failure to receive a promotion in 2015 (because he never obtained a notice of right to sue from the EEOC); and (ii) did not include any allegations in his charge about his alleged job transfer in fall of 2015 (which, in any event, would not qualify as an adverse action).  *See Wanda Heard v. U.S. Steel*, 2006 WL 3775942 (S.D. Ill. Dec. 21, 2006) ("Before an employee can sue under this provision, she must timely file a charge with, and **receive a "right to sue letter" from, the EEOC.**") (emphasis added).  Because their EEOC charges do not contain any specific adverse employment actions referenced by the Complaint, Boatner, Flowers and McCurry's Title VII discrimination claims (both for failure to

provide pay raises and failure to promote) must be dismissed based upon their failure to exhaust administrative remedies.

While under certain circumstances "a claim not included in an EEOC charge may be asserted in a Title VII suit if the charge and the complaint 'describe the same conduct and implicate the same individuals,'" the Complaint and EEOC charges do not meet this test. *Carter v. Dart*, 262 F. Supp. 3d 713, 722–23 (N.D. Ill. 2017). Indeed, Boatner, Flowers and McCurry all failed to assert specific allegations in their EEOC charges about any of the individuals who are identified in the Complaint. Furthermore, although Plaintiffs generally allege they were subjected to retaliation in their EEOC charges, "'[r]etaliation' is a legal conclusion, and merely labeling conduct 'retaliatory' does not bring the complaint allegations within the ambit of the EEOC charge." *Garcia v. Fry*, 972 F. Supp. 1133, 1138 (N.D. Ill. 1997). In fact, Boatner and McCurry failed to identify a single, specific instance of protected activity in their EEOC charge. Accordingly, their Title VII retaliation claims must be dismissed, too.

Plaintiff Rosales has a different version of the same problem. He purports to assert, in Count X, a claim under Title VII based on the University Defendants' failure to train him. But Rosales did not include any allegations regarding the University's alleged failure to train him in his EEOC charge. *See Carter,* 262 F. Supp. 3d at 722–23 (holding the plaintiff's "failure-to-train claim fails because, as [the plaintiff] appears to concede, he did not mention it in his EEOC charge"). Nor did Rosales ever mention Heidi Johnson or any of her conduct in his EEOC charge. *See id*.

### B.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR DISCRIMINATION.

To assert a plausible claim of discrimination under all relevant statutes, Plaintiffs must plead facts alleging (1) membership in a protected class, (2) an adverse employment action, and

(3) some connection between their protected class and the adverse employment action.  *See*

*Shankle v. Village of Melrose Park*, No. 16 C 2582, 2018 WL 844422, at *2 (N.D. Ill. Feb. 12,

2018) (plaintiff failed to state claim because she did not "explain" how her employer's denial of

work assignments constituted adverse action).  Plaintiffs cannot establish an adverse action for

purposes of a failure-to-promote claim with conclusory allegations.  *See Resendez v. Klein Tools,*

*Inc.*, No. 12 C 5697, 2013 WL 5609335, at *7 (N.D. Ill. Oct. 10, 2013) ("The complaint is too

conclusory as to what the alleged adverse action entailed, who was responsible, or at what point

during [plaintiff's] eighteen years of employment it took place").

Not every employment action—even if unfavorable—supports a discrimination claim.

The action "must materially alter the terms and conditions of employment." *Stutler v. Ill. Dep't*

*of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001).  An adverse action imposes a significant change in

employment status, such as:

> (1) termination or reduction in compensation, fringe benefits, or other financial
> terms of employment; (2) transfers or changes in job duties that cause an
> employee's skills to atrophy and reduce future career prospects; and (3)
> unbearable changes in job conditions, such as a hostile work environment or
> conditions amounting to constructive discharge.

*Monroe v. Columbia Coll. of Chi.*, No. 17-cv-5837, 2018 WL 4074190, at *3 (N.D. Ill. Aug. 27,

2018) (internal quotation marks omitted).

Here, Plaintiffs McCurry and Flowers' failure-to-promote claims focus on the

University's alleged denial of "upgrades," i.e., opportunities for temporary supervisory

responsibility, as the adverse employment actions they are seeking to challenge.  District courts

in the Seventh Circuit have found that temporary promotions, much like the "upgrades"

described in Plaintiffs' Complaint, do not qualify as adverse employment actions as a matter of

law.  *See  Erkan v. Illinois Dep't of Corr.*, No. 04C1550, 2006 WL 3087109, at *7 (N.D. Ill. Oct.

27, 2006) (no adverse employment action where "we are dealing not with an actual promotion . . . but rather with a temporary assumption of. . . responsibilities"); *Otero v. City of Chicago*, No. 10 CV 2284, 2013 WL 530977, at *9 (N.D. Ill. Feb. 6, 2013) ("temporary positions" did not qualify as a promotion).   Because upgrades do not qualify as an adverse action, Plaintiffs' failure-to-promote claims arising from them fail.

More broadly, Plaintiffs' discrimination claims fail because they do not plausibly allege that they suffered any adverse employment action *because* of their race.   To proceed, Plaintiffs must set forth more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678.   But here, Plaintiffs plead no facts from which the Court can reasonably infer a connection between their protected class and their alleged failure to receive a promotion or raise. *See Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1064 (N.D. Ill. 2018) ("Even accepting that allegations of being denied a raise and promotion suffice to plead that Plaintiff suffered a materially adverse action, Plaintiff does not allege that these raise and promotion denials were based on discriminatory animus.   Without such allegations, her claims based on these denials must fail.").   To that end, Plaintiffs fail to allege that a single decision-maker identified in the Complaint harbored discriminatory animus, much less allege that the decision-making process resulted in a discriminatory adverse employment action.   Accordingly, Plaintiffs fail to state a claim for discrimination.

## IV.   PLAINTIFFS' ICRA CLAIMS FAIL AS A MATTER OF LAW (COUNTS III, VI, AND IX).

Plaintiffs' ICRA claims fail: (i) for the same reasons as Plaintiffs' Title VII claims (with the exception of Defendants' failure-to-exhaust arguments); and (ii) because ICRA is a disparate impact statute not designed for intentional claims.   *See Warr-Hightower v. Illinois Cent. Coll*., No. 117CV01153JBMJEH, 2017 WL 5484671, at *8 (C.D. Ill. Nov. 15, 2017); *see also Jackson*

*v. Cerpa*, 696 F.Supp.2d 962, 964 (N.D.Ill.2010) (The ICRA "was expressly intended to provide a state law remedy that was identical to the federal disparate impact canon.") (emphasis in original); *Cox v. Kisro*, No. 5-10-0045, 2011 WL 10500941, at *5 (Ill. App. Ct. Feb. 25, 2011) ("The Illinois Civil Rights Act creates a private right of action for disparate-impact-discrimination claims.").   Accordingly, Plaintiffs' ICRA claims must also be dismissed with prejudice.

## V.     CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants seek an Order of this Court dismissing Plaintiffs' Complaint with prejudice, awarding Defendants their fees and costs, and providing such further relief as the Court deems appropriate.

Dated: May 20, 2019                    Respectfully Submitted,


**THE UNIVERSITY OF ILLINOIS, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, HEIDI JOHNSON, MAUREEN BANKS, CHAD GARRETT, AND MARK BARCUS**

By:     s/ *Christopher B. Wilson*
    One of Its Attorneys

Christopher B. Wilson
Jon R. Buck
Christopher Lepore
PERKINS COIE LLP
131 S. Dearborn; Suite 1700
Chicago, IL 60603
Tel: (312) 324-8400
Fax: (312) 324-9400
CWilson@perkinscoie.com
JBuck@perkinscoie.com
CLepore@perkinscoie.com

## **CERTIFICATE OF SERVICE**

I, Christopher B. Wilson, certify that on May 20, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may also access this filing through the Court's ECF system.

By: s/ *Christopher B. Wilson*

## **CERTIFICATE OF COMPLIANCE**

Christopher B. Wilson, an attorney duly admitted to practice before the United States District Court of the Central District of Illinois, hereby certifies that the foregoing brief complies with Local Rule 7.1 of the U.S. District Court of the Central District of Illinois.  The brief contains 6,786 words, as counted by the word processing system used to prepare it.

By: *s/ Christopher B. Wilson*