E-FILED
Monday, 30 September, 2019  07:32:35 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| GIRALDO ROSALES, an individual; MELVIN BOATNER, an individual; ADRIAN FLOWERS, an individual; and FRANK MCCURRY, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSITY OF ILLINOIS; THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS; and MAUREEN BANKS, an individual; HEIDI JOHNSON, an individual; CHAD GARRETT, an individual; and MARK BARCUS, an individual, <br><br> Defendants. | No. 2:19-cv-02021 <br><br> The Hon. Colin Stirling Bruce <br><br><br><br><br> TRIAL BY JURY DEMANDED |

## DEFENDANTS' ANSWER TO AMENDED COMPLAINT
## AND AFFIRMATIVE DEFENSES

Defendants the University of Illinois (the "University"), The Board of Trustees of the University of Illinois (together, the "University Defendants"), Maureen Banks, Heidi Johnson, Chad Garrett and Mark Barcus (together, the "Individual Defendants") (altogether, "Defendants") by and through their undersigned attorneys, hereby answer the Amended Complaint ("Complaint") of Plaintiffs Giraldo Rosales, Melvin Boatner, Adrian Flowers and Frank McCurry, and state their affirmative defenses as follows:

### NATURE OF THE CASE

1.      This case arises from the discriminatory conduct of the University Defendants and their agents in the Department of Facilities & Services, the Office of Diversity, Equity and Access, and throughout their human resources operation.

**ANSWER**:

Defendants deny the allegations in this paragraph.

2.      Plaintiffs bring claims pursuant to the Civil Rights Act, 42 USC Section 2000(e) *et seq*., known as Title VII, 42 USC § 1983, and the Illinois Civil Rights Act, 740 ILCS 23/ *et seq*.,

for violations of their civil rights against discriminatory conduct based on race, color and national origin, as applicable, retaliation for opposition to discriminatory conduct, and disparate treatment in terms of promotions.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required. To the extent it contains factual allegations, Defendants admit that Plaintiffs purport to proceed as set forth in this paragraph and otherwise deny the remaining allegations in this paragraph.

3.      Plaintiffs are all long-term employees of Defendant University who, due to their race, were retaliated against for engaging in protected activity, denied opportunities for promotion, and/or denied pay raises and training as a result of which they suffered a loss of income, esteem, and suffered from severe emotional distress.

**ANSWER**:

Defendants deny the allegations in this paragraph.

4.      Plaintiffs expressed opposition to Defendant University's and its agents' discriminatory conduct and practices, for which they suffered retaliation in the form of materially adverse employment conditions including negative performance evaluations connected to denial of raises and promotions, discharge, denied promotions and upgrades, and hostile conduct.

**ANSWER**:

Defendants deny the allegations in this paragraph.

5.      All the Plaintiffs named herein have brought actions for violation of their civil rights in the form of a separate hostile work environment class claim being prosecuted separately.

**ANSWER**:

Defendants deny the allegations in this paragraph.

### JURISDICTION AND VENUE

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(a)(4), and § 1983.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required. To the extent it contains factual allegations, Defendants admit that Plaintiffs purport to invoke this Court's jurisdiction as set forth herein and otherwise deny the remaining allegations contained in this paragraph.

7.      Subject matter jurisdiction of this Court is invoked over Plaintiffs' claims pursuant to Title VII of the Civil Rights act of 1964, 42 U.S.C. 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1983 ("§ 1983"), and pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4) and supplemental jurisdiction of the Illinois Civil Rights Act ("ICRA") claims pursuant to 28 USC § 1367.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required. To the extent it contains factual allegations, Defendants admit that Plaintiffs purport to invoke this Court's jurisdiction as set forth herein and otherwise deny the remaining allegations contained in this paragraph.

8.      Venue is proper under 28 USC § 1391 because the acts complained of by Plaintiffs occurred within this judicial district and because the Defendants conduct their principal places of business within this district.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required.  To the extent it contains factual allegations, Defendants admit Plaintiffs purport to invoke venue as set forth herein and otherwise deny the remaining allegations in this paragraph.

9.      Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 8.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required.  To the extent it contains factual allegations, Defendants admit that Plaintiffs purport to seek a jury trial but deny they are entitled to same.

**PROCEDURAL HISTORY**

10.    Plaintiffs timely filed charges with the Equal Employment Opportunity Commission ("EEOC") relating to the relevant counts under Title VII, and were issued notices of right to sue ("NORTS").

**ANSWER**:

Defendants deny the allegations in this paragraph.

11.    Plaintiff Boatner filed charges with the EEOC on May 17, 2017, amending a complaint from June 19, 2015. All allegations of the charges are incorporated by reference hereto. The conduct complained of in the EEOC charge continued after the filing of the charge.

**ANSWER**:

Defendants admit that Boatner filed charges with the EEOC on May 17, 2017, and June 19, 2015, and otherwise deny the remaining allegations in this paragraph.

12.    Plaintiff Flowers filed charges with the EEOC on May 15, 2017. All allegations of the charges are incorporated by reference hereto. The conduct complained of in the EEOC charge continued after the filing of the charge.

**ANSWER**:

Defendants admit that Flowers filed a charge with the EEOC on May 15, 2017, and otherwise deny the remaining allegations in this paragraph.

13.    Plaintiff McCurry filed charges with the EEOC on May 17, 2017. All allegations of the charges are incorporated by reference hereto. The conduct complained of in the EEOC charge continued after the filing of the charge.

**ANSWER**:

Defendants admit that McCurry filed a charge with the EEOC on May 17, 2017, and otherwise deny the remaining allegations in this paragraph.

14.    Plaintiff Rosales filed charges with the EEOC on May 18, 2017. All allegations of the charges are incorporated by reference hereto. The conduct complained of in the EEOC charge continued after the filing of the charge.

**ANSWER**:

Defendants admit that Rosales filed a charge with the EEOC on May 18, 2017, and otherwise deny the remaining allegations in this paragraph.

15.     On August 21, 2017, the Parties entered into a tolling agreement ("the Tolling Agreement") which tolled all applicable statutes of limitations and filing requirements with respect to disparate treatment and retaliation claims.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required. To the extent it contains factual allegations, Defendants admit that the parties entered into the Tolling Agreement and that the document reflects the understanding of the parties.  Defendants otherwise deny the remaining allegations in this paragraph.

16.     The Tolling Agreement continued through and included January 29, 2019.

**ANSWER**:

Defendants admit the allegations in this paragraph.

17.     Plaintiffs filed a complaint on January 28, 2019.

**ANSWER**:

Defendants admit the allegation in this paragraph.

18.     Defendants waived service and timely filed a responsive motion pursuant to Fed. R. Civ. P. 12(b) on April 15, 2019.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required. To the extent it contains factual allegations, Defendants admit the allegations in this paragraph.

19.     This First Amended Complaint was filed within 21 days of Defendants' responsive motion, pursuant to Fed. R. Civ. P. 15(a)(1)(B).

**ANSWER**:

This paragraph contains legal conclusions to which no response is required. To the extent it contains factual allegations, Defendants admit the allegations in this paragraph.

20.     True and correct copies of the relevant EEOC charges are attached hereto as EXHIBIT "A."

**ANSWER**:

Defendants admit that Plaintiffs purport to attach EEOC charges they filed to the Amended Complaint as Exhibit "A" and otherwise deny the remaining allegations of this paragraph.

**PARTIES**

21.     Giraldo Rosales was an employee of the University of Illinois for nearly thirty years, working in various capacities. At the times relevant to this complaint, he worked for the Defendant University's Office of Diversity, Equity and Access ("ODEA").

**ANSWER**:

The University Defendants and Defendant Johnson admit the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

22.     Mr. Rosales is no longer employed by the University and is a resident of Illinois, within the Central District.

**ANSWER**:

The University Defendants and Defendant Johnson admit that Rosales is no longer employed at the University and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis deny them. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

23.     Mr. Rosales is Black, of Cuban national origin.

**ANSWER**:

Defendants admit the allegations in this paragraph.

24.     Melvin Boatner has worked for Defendant University for twenty-eight years in various capacities. At the times relevant to this complaint, Mr. Boatner worked in various human

resources capacity, most recently as Associate Director of Human Resources in the Facilities & Services Department.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

25.     Mr. Boatner is a resident of Indiana and has worked continuously at the University for approximately twenty years.

**ANSWER**:

Defendants admit that Mr. Boatner is a resident of Indiana.  The University Defendants and Defendant Banks deny the remaining allegations in this paragraph.  Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and on that basis deny them.

26.     Mr. Boatner is African-American.

**ANSWER**:

Defendants admit the allegations in this paragraph.

27.     Adrian Flowers at times relevant worked for the Facilities and Services Department as a groundskeeper, for Defendant University for over a decade.

**ANSWER**:

The University Defendants and Defendant Garrett admit the allegations in this paragraph. Defendants Johnson, Barcus and Banks lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

28.     Mr. Flowers is African-American.

**ANSWER**:

Defendants admit the allegations in this paragraph.

29.     Frank McCurry has worked as a Carpenter for the Defendant University's building services-related departments, for over a decade.

**ANSWER**:

The University Defendants and Defendant Barcus admit the allegations in this paragraph. Defendants Johnson, Garrett and Banks lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

30.    Mr. McCurry is African-American.

**ANSWER**:

Defendants admit the allegations in this paragraph.

31.    Defendant University of Illinois at Urbana-Champaign is a public university located within the Central District of Illinois, a unit of state government and an employer for purposes of Title VII of the Civil Rights Act.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required. To the extent it contains factual allegations, Defendants admit that the University is a public university located in Urbana and Champaign, Illinois.

32.    Defendant Trustees of the University of Illinois at Urbana-Champaign are the elected officials responsible for governance and administration of the University.

**ANSWER**:

Defendants deny the allegations in this paragraph.

33.    Defendant Dr. Maureen Banks was Plaintiff Melvin Boatner's supervisor and at all times relevant the director for safety for Mr. Boatner's department.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

34.    Defendant Heidi Johnson was Plaintiff Giraldo Rosales's supervisor at times relevant to this complaint.

**ANSWER**:

The University Defendants and Defendant Johnson admit the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

35.     Defendant Chad Garrett was Adrian Flowers supervisor at times relevant to this complaint.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Banks, Barcus and Johnson lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

36.     Defendant Mark Barcus was Plaintiff Frank McCurry's supervisor at times relevant to this complaint.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Banks, Garrett and Johnson lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

37.     All Plaintiffs are or were employees of University as defined by Title VII of the Civil Rights Act.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required. To the extent it contains factual allegations, Defendants deny the allegations in this paragraph.

## STATEMENT OF FACTS

38.     The University of Illinois at Urbana-Champaign ("UIUC"; "the University"; "University Defendants") is a large public university with thousands of employees located primarily in Urbana and Champaign, Illinois.

**ANSWER**:

Defendants admit the allegations in this paragraph.

39.     UIUC as a public university and public employer has employees that are variously defined as civil service workers, academic professionals, unionized employees and at-will employees.

**ANSWER**:

Defendants deny the allegations in this paragraph.

40.     Civil service workers are covered by state and university policies regarding hiring and promotion, requiring employees to take and score high or at the top on civil service exams to qualify for promotions, pay rises, and upgrades.

**ANSWER**:

Defendants deny the allegations in this paragraph.

41.     Within the policy parlance of the University, employees could qualify for promotions or "upgrades," which entailed being eligible to take on temporary responsibility for supervisory authority, including higher pay. "Upgrades" therefore constituted a form of promotion.

**ANSWER**:

Defendants admit that, in some circumstances, the term "upgrades" refers to an individual taking on temporary responsibility for an increased role. Defendants deny the remaining allegations in this paragraph.

42.     For all Plaintiffs, including those covered by collective bargaining agreements, eligibility and selection for promotions and upgrades was determined at least in part by their supervisors subjective impressions and reports about Plaintiffs' work.

**ANSWER**:

Defendants deny the allegations in this paragraph.

43.     Academic Professionals, such as Plaintiff Rosales, are not covered by civil service rules or a collective bargaining agreement, and particularly subject to the subjective judgment of their supervisors when pay rises, upgrades and promotions are being considered.

**ANSWER**:

Defendants deny the allegations in this paragraph.

44.     The University's Office of Diversity, Equity and Access ("ODEA"), now called the Office of Access and Equity, is responsible for developing the University's policies and practices for faculty diversity and access to leadership, training, and University resources. The ODEA also had responsibility for enforcing the University's affirmative action hiring, promoting and discipline procedures, including investigation of claims of discriminatory conduct.[1]

**ANSWER**:

Defendants deny the allegations in this paragraph.

45.     The University's Human Resources department is divided into two parts, one dealing with faculty ("Academic Human Resources") and one dealing with civil services staff ("Staff Human Resources").

**ANSWER**:

Defendants admit that the Human Resources office at the University of Illinois has divisions that include Academic Human Resources and Staff Human Resources and otherwise deny the remaining allegations in this paragraph.

46.     Some of the larger units of organization within the University, including Facilities & Services, maintain their own Employee Relations/Human Resources and Payroll offices.

**ANSWER**:

Defendants admit the allegations in this paragraph.

47.     The University's Facilities & Services Department is responsible for the University's various maintenance, repair, and physical facilities upkeep functions on its Champaign/Urbana campus.

**ANSWER**:

Defendants admit the allegations in this paragraph.

---

[1] Until late 2017, the Office of Access and Equity at UIUC was called the Office of Diversity, Equity and Access, abbreviated ODEA. "ODEA" is used throughout for to avoid confusion.

48.     Throughout the period of at least 2007 to present, Plaintiffs have worked in a hostile work environment, for which a separate action has been filed.

**ANSWER**:

Defendants deny the allegations in this paragraph.

49.     The work environment in the Office of Diversity, Equity and Access and the Facilities & Services Department was consistently hostile for African-American and Black employees. Several employees, including Plaintiffs, experienced consistent discrimination based on race and color, and in the case of Plaintiff Rosales, race, color, and national origin.

**ANSWER**:

Defendants deny the allegations in this paragraph.

50.     When employees, including Plaintiffs, raised concerns, opposition, and took formal steps to engage in protected activity to halt the discriminatory behavior at the University, they suffered from retaliation in the form of adverse employment actions.

**ANSWER**:

Defendants deny the allegations in this paragraph.

51.     This pervasive atmosphere of racial discrimination also took the form of persistent failure of the University to give promotions and temporary promotions (i.e., "upgrades") to Black and African-American employees, failure to train, failure to offer merit raises, and through diminished work responsibilities.

**ANSWER**:

Defendants deny the allegations in this paragraph.

Giraldo Rosales

52.     Plaintiff Giraldo Rosales was hired by the University twenty-eight years ago, in 1990, classified as an Academic Professional.

**ANSWER**:

The University Defendants and Defendant Johnson admit the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

53.     Academic Professionals are non-union and work on annual contracts renewed prior to the Fall Semester and extended until the next Fall semester.

**ANSWER**:

Defendants admit the allegations in this paragraph.

54.     Academic professionals are not protected by collective bargaining agreements and are evaluated, promoted, given raises, and otherwise disciplined based on a subjective merit system that turns on their immediate supervisor's opinions.

**ANSWER**:

Defendants deny the allegations in this paragraph.

55.     In the course of his employment, Mr. Rosales held numerous job titles including serving as the director of La Casa Cultural Latina, a programming unit at the university responsible for developing educational, cultural, socio-political, and social engagement across the campus, with a focus on recruitment, retention within the Latina/o campus-wide population.

**ANSWER**:

The University Defendants and Defendant Johnson admit the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

56.     For twenty-seven years, Mr. Rosales was on an annual contract that was renewed in the late summer of each year for another year.

**ANSWER**:

The University Defendants and Defendant Johnson admit the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

57.     In 2014, Mr. Rosales was passed over for promotion to Senior Assistant Dean of Students, and three white workers with substantially similar job duties, qualifications and job performance were promoted in title or received salary increases.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

58.     In response, Mr. Rosales filed an EEOC charge in 2014 complaining of racial discrimination and retaliation.

**ANSWER**:

The University Defendants admit that Rosales filed a charge with the EEOC in 2014 and otherwise refer the Court to the Rosales' 2014 charge for its true and correct contents.  Defendants Johnson, Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

59.     In December 2016, Mr. Rosales was demoted from his position as Assistant Director of ODEA because of his race (Black) and color (i.e., as an Afro-Cuban Latino).

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

60.     Also in December, Mr. Rosales was pressured to resign his position and accept a lesser position, while a white colleague with the same title and performance record, Tracy Kleparski, was not so targeted. Defendant Johnson would have been the decision-maker for this decision.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

61.     The title changes Mr. Rosales was forced to accept were not on a promotion track. Titles with Assistant Dean and Director had upward mobility that came with significant salary increases. The demotion title Mr. Rosales was given, Coordinator, was the highest level on that title track with no ability to increase salary, except for annual merit awards.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

62.     Also in December 2016, Mr. Rosales was denied a promotion based on his race and/or color. Defendant Johnson would have been the decision-maker for this decision.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

63.     Specifically, in December 2016, Mr. Rosales had applied to the position of Assistant Director of Facilities & Services, which was nearly identical in job duties and qualifications to the position of Assistant Director he formerly occupied. The search was closed after Mr. Rosales applied ostensibly because no suitable candidate was identified, though Mr. Rosales fit the requirements for the position. This position was open and closed three times, with Mr. Rosales applying twice, and denied both times.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

64.     Subsequent to this complaint, between 2014 and 2017, Mr. Rosales made several complaints to human resources and University leadership regarding the racially discriminatory treatment he faced as well as the atmosphere of racial discrimination at the University.

**ANSWER**:

The University Defendants and Defendant Johnson admit that Rosales made reports to University leadership and refer the Court to those reports for their true and correct content. The University Defendants otherwise deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

65.     In this period, Mr. Rosales's supervisor Heidi Johnson began to subject him to excessive scrutiny, calling him in for sudden meetings to discuss his work, belittling his work in front of his coworkers, and otherwise engaging in conduct that would inhibit an employee from challenging unlawful discriminatory practices.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

66.     On January 20, 2017 Mr. Rosales sent a letter to Assistant Provost of Administrative Affairs Sharon Reynolds protesting this continued discriminatory treatment at the hands of his supervisor Heidi Johnson.

**ANSWER**:

To the extent this paragraph purports to quote a document, such document speaks for itself. Defendants deny any remaining allegations in this paragraph.

67.     In this letter, Mr. Rosales detailed Johnson's discriminatory and retaliatory treatment of him, including among other things publicly dressing him down in a hallway in front of his colleagues. Mr. Rosales specifically asked for a meeting to discuss "forms of retaliation, discrimination and [conduct] not according to the University's professional code of conduct."

**ANSWER**:

To the extent this paragraph purports to quote a document, such document speaks for itself. Defendants deny any remaining allegations in this paragraph.

68.     On or about January 23, 2017, Mr. Rosales met with Sharon Reynolds after sending this letter to ask for remedial action and that his responses to mistreatment, including being passed over for open positions, be formally included in his personnel file. Mr. Rosales was told that his complaints about his differential treatment had not been included in his personnel file.

**ANSWER**:

The University Defendants admit that Rosales, from time to time, met with various members of University leadership and otherwise deny the remaining allegations in this paragraph. Defendants Banks, Garrett, Johnson and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

69.     No remedial action was taken after Mr. Rosales' letter to Reynolds.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

70.     In March of 2017, Johnson denied Mr. Rosales a merit-based pay increase, about two months after his letter to Sharon Reynolds protesting his discriminatory treatment and the retaliatory conduct of his supervisor Heidi Johnson.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

71.     At least one white colleagues of Mr. Rosales in the same department with equivalent qualifications received merit pay increases despite equivalent performances.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

72.     On May 18, 2017, Mr. Rosales filed an EEOC charge alleging inter alia discrimination and retaliation for his opposition to the University's discriminatory treatment of him.

**ANSWER**:

The University Defendants and Defendant Johnson admit that Rosales filed a charge with the EEOC on or about May 18, 2017, and otherwise respectfully refer the Court to that charge for its contents.  Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

73.     Subsequent to his EEOC charges, Heidi Johnson began to subject Mr. Rosales to retaliatory treatment that would clearly dissuade a reasonable employee from expressing their rights under Title VII.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

74.     This conduct included increased scrutiny, belittling and insulting behavior, and negative performance reviews, which within his role as an Academic Professional, impacted his ability to secure merit raises and promotions.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

75.     The belittling statements and criticisms Mr. Rosales was given by his supervisor, Heidi Johnson, were racially and ethnically discriminatory, including that his supervisor couldn't "understand" him and that his demeanor was overly demonstrative.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

76.     For example, Defendant Johnson criticized Mr. Rosales for being overly demonstrative in his manner of speech, questioned his ability to relate to the "majority population" of the university, i.e., the majority white student body and employees, and characterized him as "aggressive."

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

77.     Heidi Johnson, at all times relevant hereto Mr. Rosales's supervisor and the relevant decision maker, made numerous comments showing racial animus.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

78.      Mr. Rosales began to be excluded by Heidi Johnson from critical training programs. White coworkers were not denied access to these training programs.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

79.      In his August 2017 performance review, approximately three months after filing his EEOC charge, Mr. Rosales was rated "not acceptable" due to his alleged inability "to demonstrate mastery of the affirmative action process to be able to manage good faith efforts and recruitment initiatives…"

**ANSWER**:

To the extent this allegation purports to excerpt portions of Rosales' 2017 performance review, that document speaks for itself. The University Defendants and Defendant Johnson admit that Rosales was rated "not acceptable" in 2017 and otherwise deny the remaining allegations of this paragraph.  Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

80.      The negative performance evaluation was conclusory in nature. Prior to the August 1, 2017 evaluation meeting, Mr. Rosales was asked to and did provide Johnson with a self-assessment form that detailed his accomplishments throughout the evaluation period.

**ANSWER**:

The University Defendants and Defendant Johnson admit that Rosales completed a self-evaluation prior to August 2017 and otherwise deny the remaining allegations in this paragraph.

Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

81.     This self-assessment document laid out the number of ways Mr. Rosales had remained engaged and achieved objectives throughout the evaluation period, with reference to specific accomplishments.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph and otherwise respectfully refer the court to the self-assessment document referenced therein for its true and correct contents.  Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

82.     The self-assessment Mr. Rosales prepared at Johnson's request included details of professional development training he had undertaken, implementation of a new database system, initiatives he had taken to engage with community institutions and organizations to improve diversity and recruitment, conferences and fairs attended to improve community relations and recruitment, and careful documentation of efforts related to efforts to increase diversity.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph and otherwise respectfully refer the court to the self-assessment document referenced therein for the true and correct contents thereof.  Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

83.     Throughout this period leading up to the August 1, 2017 evaluation, Johnson had requested weekly meetings to discuss Mr. Rosales's performance, and went on to cancel a number of these meetings.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

84.     When Johnson and Rosales *did* meet during this period, Johnson failed to give Mr. Rosales any specific areas of needed improvement.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

85.     Johnson's rating of Mr. Rosales's performance was by far the worst performance review he had received in his twenty-seven years of service to the University.

**ANSWER**:

This paragraph purports to quote a number of documents.  Those documents speak for themselves.  The University Defendants and Defendant Johnson deny the remaining allegations in this paragraph.  Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

86.     As of the August 1, 2017 meeting, Mr. Rosales had been in his new position for less than a year, with new responsibilities and duties, had received no feedback and was summarily listed as having the lowest-possible rating in every area.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

87.     Johnson recommended non-renewal of Mr. Rosales's employment contract at this August 2017 meeting, amounting to a constructive discharge that would take effect in August 2018.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

88.     On or around August 28, 2017, Mr. Rosales wrote a letter to a chancellor of the University, Robert Jones, to try to force attention of the administration to the situation.

**ANSWER**:

To the extent this paragraph purports to quote a document, such document speaks for itself. Defendants deny any remaining allegations in this paragraph.

89.     In this letter, Mr. Rosales detailed his treatment by Johnson, the irregular performance review of August 1, 2017, and its retaliatory nature having taken place less than three months after his May 2017 EEOC charge.

**ANSWER**:

To the extent this paragraph purports to quote a document, such document speaks for itself. Defendants deny any remaining allegations in this paragraph.

90.     Mr. Rosales also requested in his August 28, 2017 letter to Chancellor Jones that Johnson's recommendation of non-reappointment be rescinded, a new evaluation be prepared, and that the University take remedial action to prevent further retaliation by Johnson and discriminatory conduct in his department.

**ANSWER**:

To the extent this paragraph purports to quote a document, such document speaks for itself. Defendants deny any remaining allegations in this paragraph.

91.     Mr. Rosales received no response to his August 28, 2017 letter to Chancellor Jones.

**ANSWER**:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

92.     The failure of the University to respond to Mr. Rosales' complaints, Johnson's conduct after his filing of the May 2017 EEOC charge, the August 2017 constructive discharge and the University's further failure to act after Mr. Rosales's alerted the Chancellor to the foregoing are enough at a minimum to dissuade a reasonable employee to oppose discriminatory conduct at the University.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

93.     Mr. Rosales was consistently denied promotions and the associated pay predicated on retaliatory conduct, i.e. poor performance reviews, by his supervisors including Heidi Johnson.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

94.     As a result of Defendant University's conduct, Mr. Rosales suffered from emotional distress, increased stress, anxiety and depression, which impacted his day-to-day life, including his home life, and manifested as medical issues for which he had to consult a physician.

**ANSWER**:

The University Defendants and Defendant Johnson deny the allegations in this paragraph. Defendants Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

Melvin Boatner

95.     Mr. Boatner has been an employee of Defendant University for over 15 years, in the same job title of Associate Director of Employee Relations with responsibility for the Facilities & Services Department.

**ANSWER**:

The University Defendants and Defendant Banks admit that Boatner has been employed for over 15 years and otherwise deny the remaining allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

96.      In his role as a human resources professional, Mr. Boatner has been an advocate for employees facing discriminatory conduct.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

97.      Over the last five years in particular, Mr. Boatner has raised concerns regarding incidents of racist harassment and intimidation of employees in the Facilities & Services Department, including employees finding nooses and use of racial slurs.

**ANSWER**:

The University Defendants and Defendant Banks admit Boatner raised concerns at various times and otherwise deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

98.      On or about August 19, 2014, Mr. Boatner submitted a complaint of racial discrimination against his supervisor, Curt Taylor, stemming from a "failed search" incident regarding a Black candidate for an open position, Nicole McCurry.

**ANSWER**:

The University Defendants admit that Boatner submitted a report regarding Carl Taylor and respectfully refer the Court to that report for its true and correct contents. Defendants Banks, Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

99.     Mr. Boatner complained of racial animus in the decision to deny Nicole McCurry the position as he had previously promoted to white applicants but was denied the ability to promote Ms. McCurry.

**ANSWER**:

The University Defendants admit that Boatner made a report regarding Nicole McCurry and refer the Court to that report for its true and correct contents. The University Defendants deny the remaining allegations in this paragraph.  Defendant Banks, Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

100.    After submitting this complaint, Mr. Boatner was subjected to a string of retaliatory employment actions.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

101.    For example, Mr. Boatner was asked by Carl Wegal, Director of Operations, Maintenance and Alterations, to recuse himself from candidate search procedures that involved African-American candidates, where this was not expected of white colleagues evaluating white candidates, and representing a diminution of his work responsibilities.

**ANSWER**:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

102.    In February of 2016, Mr. Boatner was passed over by Dr. Banks for a merit raise. All of Mr. Boatner's colleagues, including all of his white colleagues, received raises.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

103.     In January of 2017, Mr. Boatner sent a complaint to the University administration complaining of disparate treatment based on racial discrimination. This letter to the highest levels of the administration kicked off a period of intense retaliation and hostility.

**ANSWER**:

The University Defendants and Defendant Banks admit that Boatner made reports at various times and otherwise deny the remaining allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

104.     In February of 2017, Mr. Boatner was given the lowest raise in his department, of 1.5% when 2% was authorized. This was the lowest raise in his department. All of his white colleagues received higher raises.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

105.     In May of 2017, Mr. Boatner filed a charge with the EEOC charging racial discrimination in the form of disparate pay, disparate treatment including disparate promotion, a hostile work environment and retaliation.

**ANSWER**:

The University Defendants admit Boatner filed a charge with the EEOC in May of 2017 and otherwise refer the Court to that charge for its true and correct contents. The University Defendants deny the remaining allegations in this paragraph. Defendants Banks, Johnson, Garrett

and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

106.    After his May 2017 EEOC Charge, Mr. Boatner also began to receive reprimands and negative performance reviews. His supervisors, including Maureen Banks and Eric Smith, pressured him to stop raising complaints to the University leadership.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

107.    After this charge was filed, Mr. Boatner was subjected to increased scrutiny and retaliatory, adverse employment actions, and warnings against continuing to oppose discriminatory practices by his "immediate supervisor" and a relevant decision- maker, Dr. Maureen Banks, along with others who participated in supervisory functions and discipline in his department, Helen Coleman and Eric Smith.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

108.    In August of 2017, Mr. Boatner, hoping to see some remedial action take place, submitted complaints of the racially discriminatory atmosphere at the University to the University Chancellor.

**ANSWER**:

The University Defendants admit that Boatner submitted reports to the Chancellor in August of 2017 and lack knowledge or information sufficient to ascertain what Boatner "hoped" to accomplish by doing so.  The University Defendants otherwise respectfully refer the Court to the reports referenced for their true and correct contents and deny the remaining allegations in this paragraph.  Defendants Banks, Johnson, Garrett and Barcus lack knowledge or information

sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

109.     In August of 2017, Mr. Boatner was given a negative evaluation and letter of expectations threatening termination through non-reappointment if improvement was not seen within 60 days by Dr. Banks.

**ANSWER**:

The University Defendants and Defendant Banks admit that Boatner was provided a "Letter of Expectation" in August of 2017 and otherwise refer the Court to that letter for its true and correct contents. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

110.     In the same negative evaluation letter prepared by Dr. Banks, Mr. Boatner's right to work from home on limited days during the week ("Telecommuting Agreement") was revoked, representing a materially adverse change in his working conditions. Mr. Boatner lives approximately three hours driving distance from the University, and the Telecommuting Agreement had been in place approximately ten years.

**ANSWER**:

The University Defendants and Defendant Banks admit that Boatner's Telecommuting Agreement was discontinued in August 2017 and otherwise refer the Court to the "Letter of Expectation" referenced for its true and correct contents. The University Defendants and Defendant Banks deny the remaining allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

111.     Mr. Boatner shortly thereafter in late August 2017, sent a letter to the University Chancellor expressing his concern about Dr. Banks' evaluation and letter of expectation ("Chancellor LOE Letter").

**ANSWER**:

The University Defendants and Defendant Banks admit that Boatner made a report to the University Chancellor in August 2017 and refer the Court to that report for its true and correct contents.  The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

112.    No remedial action was taken by the University as a result of the Chancellor LOE Letter. This could be taken as adoption or approval of the retaliatory actions taken by Mr. Boatner's supervisors.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

113.    Around this time, Eric Smith, who was responsible for "assisting" Dr. Banks "in addressing employment issues" in Mr. Boatner's department, asked Mr. Boatner "where he was going to work" if he "continued to complain."[2]

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Barcus, Johnson and Garett otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

114.    Defendants' conduct would deter a reasonable employee from opposing or complaining about discriminatory practices.

---

[2] Eric Smith is recognized as having supervisory and disciplinary roles over Mr. Boatner by Helen Coleman, at the time the interim executive director of the Facilities & Services Department where Mr. Boatner worked, in a September 2017 letter to Mr. Boatner. Dr. Banks also lists both Helen Coleman and Eric Smith as having supervisory functions over Mr. Boatner in an August 2017 letter.

**ANSWER**:

Defendants deny the allegations in this paragraph.

115.     In late November or early December of 2017, approximately three months after sending the Chancellor LOE Letter, Mr. Boatner, in a staff meeting suffered from a stroke and collapsed.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

116.     Dr. Banks, the director of occupational safety and compliance for Mr. Boatner's department, who had left the meeting, returned to the room and callously told Mr. Boatner, "You know, if you aren't feeling well, you can go home." Eric Smith added "he seems coherent, he must be okay."

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

117.     Helen Coleman, another supervisor and decision-maker in Mr. Boatner's department, did not bother to check on him and sent her assistant instead.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

118.     Unaware that he had suffered a stroke as no medical attention was provided, it took Mr. Boatner several hours to return home. Mr. Boatner has suffered permanent damage as a result of the lack of treatment after suffering this stroke.

**ANSWER**:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

119.   When Mr. Boatner was able to return to work months later, he asked Helen Coleman and Eric Smith why they did not offer him assistance. Coleman told him she did not believe his version of events.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

120.   The behavior or supervisory figures in Mr. Boatner's department shows their hostility to Boatner and the retaliatory, distrustful climate that they had cultivated against Mr. Boatner in his department.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

121.   In the Fall of 2018, Mr. Boatner applied for a Director's position in Human Resources.

**ANSWER**:

The University Defendants admit  that Boatner applied for positions at various times and otherwise refer the Court to related application documents for their true and correct contents. Defendants Banks, Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

122.   This Directorship position was to be a newly created position under the Executive Director of Facilities & Services, Mohamed Attala, who was aware of the May 2017 EEOC charge,

and subsequent events including Mr. Boatner's continued opposition to the discriminatory and retaliatory conduct he faced.

**ANSWER**:

The University Defendants deny the allegations in this paragraph. Defendants Banks, Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

123.   For fifteen years, Plaintiff Boatner has performed all of the job duties that would be entailed in this Directorship position.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

124.   Mr. Boatner suffered a significant loss of potential income as a result of being denied this promotion by the Executive Director.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

125.   Since at least 2014, but with intensifying scrutiny and instances of materially adverse action shortly following the May 2017 EEOC charge, Mr. Boatner has been subjected to repeated acts of retaliation intended to create an unworkable environment for him, including increased scrutiny, revocation of the Telecommuting Agreement, and callous disregard for his safety, stemming from his opposition to the racially discriminatory practices of the Defendant University.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

126.    Mr. Boatner's repeated oppositions to the conduct of his supervisors and the University in its disparate treatment of its African-American employees, including non-promotion, failure to provide raises, and non-responsiveness to hostile work environment conditions, and in particular in the Facilities and Services Department, made him a target for the retaliatory conduct described above.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

127.    As a result of Defendant University's conduct, Mr. Boatner suffered from serious physical impairment, loss of quality of life, emotional distress, increased stress, anxiety and depression, which impacted his day-to-day life, including his home life, and manifested as medical issues for which he had to consult a physician.

**ANSWER**:

The University Defendants and Defendant Banks deny the allegations in this paragraph. Defendants Johnson, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

Adrian Flowers

128.    Mr. Flowers is a civil service worker, specifically a groundskeeper, in the Facilities & Services Department from August 2007 to August 2013 and from March 2014 to present, in the Grounds Keeping Department.

**ANSWER**:

The University Defendants and Defendant Garrett admit that Flowers was employed as a groundskeeper during the timeframes set forth this paragraph but deny Flowers was alternately employed by the "Grounds Keeping Department" and "Facilities & Services" departments. Defendants Johnson, Banks and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

129.    At all times relevant to this complaint, his supervisor was Chad Garrett.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

130.    Beginning in 2007, Mr. Flowers raised explicit concerns with his supervisors and Human Resources regarding disparate access to tools and training for Black groundskeepers.

**ANSWER**:

The University Defendants deny the allegations in this paragraph. Defendants Johnson, Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

131.    In particular, Mr. Flowers opposed the University Defendants' failure to promote practices for Black groundskeepers in his unit, by sending complaints to HR.

**ANSWER**:

The University Defendants deny the allegations in this paragraph. Defendants Johnson, Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

132.    In April of 2016, Mr. Flowers returned to his desk in the Facilities & Services department to find another employee twirling a noose.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks, and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

133.    Mr. Flowers felt intimidated, humiliated and angry as a result of this incident, particularly given the difficult atmosphere for Black employees of the Facilities & Services Department.

**ANSWER**:

The allegations of this paragraph consist of a statement concerning Mr. Flowers' subjective mental state. Defendants lack knowledge or information sufficient to form a belief as to the truth of such allegations and on that basis deny them. Defendants deny any remaining allegations in this paragraph.

134.    Mr. Flowers immediately complained about the incident with a notice sent to the Human Resources department.

**ANSWER**:

The University Defendants and Defendant Garrett admit that Flowers reported an incident involving a rope in April 2015. Defendants Johnson, Banks, and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

135.    At various points in the year after reporting this incident, Mr. Flowers was denied opportunities at better-paid upgrade work and promotions, despite having top civil service exam scores.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks, and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

136.    In or about July 2016, Mr. Flowers was denied the opportunity for an upgrade (promotion), while white colleagues were granted these opportunities.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks, and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

137.    A similar denial for an opportunity for an upgrade (promotion) occurred in October 2016

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks, and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

138.    These decisions would have been made by Mr. Flowers's supervisor, Chad Garrett.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

139.    Throughout 2016 and 2017, white colleagues, such as Zach Curl, in the Facilities & Services Department were given upgrades. Mr. Flowers was denied these opportunities.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks, and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

140.    Mr. Flowers complained about being passed over for promotion on various dates through 2016 and 2017.

**ANSWER**:

The University Defendants admit that Flowers raised concerns in 2016 and 2017 and otherwise respectfully refer the Court to any documents reflecting those concerns for their true and correct contents.  The University Defendants deny the remaining allegations in this paragraph. Defendants Johnson, Banks, Garrett and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

141.    In apparent retaliation for his opposition to these practices, Mr. Flowers was denied upgrades (variations of promotions) to subforeman and suffered loss in potential pay increases as a result.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks, and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

142.    As a result of his opposition to racially discriminatory conduct by Defendants, as well as his reporting of specific racist incidents in his department, Mr. Flowers was subjected to ongoing retaliation in the form of denied opportunities for upgrades and promotions he otherwise would have been given.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks, and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

143.    As a result of Defendant University's conduct, Mr. Flowers suffered from emotional distress, increased stress, anxiety and depression, which impacted his day-to-day life, including his home life and emotional state, and manifested as medical issues for which he had to consult a therapist and a physician.

**ANSWER**:

The University Defendants and Defendant Garrett deny the allegations in this paragraph. Defendants Johnson, Banks, and Barcus lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

Frank McCurry

144.   Mr. McCurry has worked as a carpenter in the Facilities & Services Department at Defendant University's Champaign campus for approximately twenty years.

**ANSWER**:

The University Defendants and Defendant Barcus admit the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

145.   Over this period, Mr. McCurry regularly received favorable performance evaluations, including having been employee of the month and employee of the year, and met all of Defendant University's legitimate job performance expectations.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

146.   In April 2015 Mr. McCurry applied for a position as Supervisor of Building Craftsmen and scored a 100% on the civil service examination for that position, and was the only African-American employee to do so. Typically scoring so highly on the exam would entitle an applicant to an interview.

**ANSWER**:

To the extent this paragraph purports to represent the contents of certain documents, those documents speak for themselves.  The University Defendants and Defendant Barcus deny any remaining allegations in this paragraph.  Defendants Johnson, Banks, and Garrett lack knowledge

or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

147.    However when Mr. McCurry showed up for his interview, defendant Barcus did not interview him, but instead made him take a written evaluation, which was an arbitrary change to the hiring process.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

148.    Mr. McCurry subsequently complained about this change to human resources for Facilities and Services.

**ANSWER**:

The University Defendants and Defendant Barcus admit that Mr. McCurry raised certain questions about the application process and related changes were raised with human resources. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.  Defendants deny any remaining allegations in this paragraph.

149.    In June of 2015, Mr. McCurry was given his first negative performance evaluation. To this point, university customers of carpentry services had uniformly praised Mr. McCurry's work.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

150.    In or about July of 2015, Mr. McCurry filed an EEOC complaint regarding this discriminatory and irregular hiring process.[3]

**ANSWER**:

The University Defendants admit that McCurry filed an EEOC charge in July 2015 and refer the Court to that charge for its true and correct contents.  Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

151.    Despite his stellar performance, Mr. McCurry noticed that he along with other Black employees in the Facilities & Services department were not given opportunities for promotion and upgrades, and the associated pay increases, at a rate similar to that of his white colleagues.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph.  Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

152.    In the April of 2016, Mr. McCurry made a complaint to Elynn Cole, at that time a Human Resources official, complaining of the lack of equal promotion and upgrade opportunities, along with the associated pay increases.

**ANSWER**:

To the extent this paragraph purports to represent the contents of certain documents, those documents speak for themselves.  The University Defendants and Defendant Barcus deny the remaining allegations in this paragraph.  Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

---

[3] No NORTS was issued for this charge.

153.    Neither Cole nor any other officials in the Human Resources Department took any affirmative steps to address Mr. McCurry's opposition to the disparate promotion practices in the Facilities & Services Department.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

154.    In the Fall of that year, Mr. McCurry was transferred by his supervisor to a "home group," which in effect denied him "upgrade" work, which would have been supervisory and better paid. This amounted to a retaliatory transfer.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

155.    During this period, Mr. McCurry's supervisor made no promotions or upgrades of any of Mr. McCurry's Black colleagues.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

156.    For example, a white colleague, Jerry Bagwell, was given upgrades to Supervisor position in the late Autumn and winter of 2016/2017. Another white colleague, Casey Clausen, was similarly upgraded during this time period.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

157.    After his opposition to the Defendant University's discriminatory conduct was made, one of Mr. McCurry's supervisors, Mark Barcus, began to treat Plaintiff differently, telling him that he "did not know his job," denigrating his knowledge and otherwise targeting him.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

158.    Defendant University's behavior of giving negative performance reviews only after opposition to prohibited discriminatory conduct was directly related to the denial of Mr. McCurry's application for the Supervisor position, which entailed greater responsibility, esteem and pay.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

159.    As a result of Defendant University's conduct, Mr. McCurry suffered from emotional distress, anxiety, and sleeplessness. It impacted his home life as well, for which he sought counseling.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

160.    Mr. McCurry suffered a significant loss of income as a result of Defendant University's retaliatory conduct.

**ANSWER**:

The University Defendants and Defendant Barcus deny the allegations in this paragraph. Defendants Johnson, Banks, and Garrett lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and on that basis deny them.

## COUNT I, TITLE VII RETALIATION

Violation of 42 USC 2000(e) *et seq.* ("Title VII"), Retaliation, Plaintiffs ROSALES, BOATNER, FLOWERS, MCCURRY against UNIVERSITY DEFENDANTS

161.    Plaintiffs hereby incorporates paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.

162.    Plaintiffs engaged in protected activity when they expressly opposed Defendant University's discriminatory practices, and made charges regarding discriminatory treatment both to University leadership and to the EEOC.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

163.    As a result of their opposition to these discriminatory practices and their participation in protected activity, Plaintiffs suffered adverse employment actions.

**ANSWER**:

Defendants deny the allegations in this paragraph.

164.    Defendants' response to Plaintiffs' opposition to, and complaints of, Defendants' proscribed discriminatory practices, served to have a chilling effect to complaints of discrimination.

**ANSWER**:

Defendants deny the allegations in this paragraph.

165.    Defendants' retaliatory actions of subjecting Plaintiffs to adverse employment actions violated Title VII of the Civil Rights Act.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

166.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations in this paragraph.

167.    The University's unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations in this paragraph.

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.    Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Title VII; and

B.    Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.    Award the Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.    Award the Plaintiff prejudgment interest on his damages award; and

E.    Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.      Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G of the "WHEREFORE" paragraph set forth above.

## COUNT II, § 1983 RETALIATION

Violation of 42 USC § 1983, Retaliation, Plaintiffs ROSALES,
BOATNER, FLOWERS, MCCURRY against INDIVIDUAL DEFENDANTS

168.    Plaintiffs hereby incorporates paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.

169.    Plaintiffs engaged in protected activity when they expressly opposed Defendant University's discriminatory practices, and made charges regarding discriminatory treatment both to University leadership and to the EEOC.

**ANSWER**:

Defendants deny the allegations in this paragraph.

170.    As a result of opposition to these discriminatory practices and participation in protected activity, Plaintiffs suffered adverse employment actions.

**ANSWER**:

Defendants deny the allegations in this paragraph.

171.    Defendants' retaliatory actions of subjecting Plaintiffs to adverse employment actions violated Title Section 1983 of the Civil Rights Act.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

172.    Defendants' response to Plaintiffs' opposition to, and complaints of, Defendants' proscribed discriminatory practices, served to have a chilling effect to complaints of discrimination.

**ANSWER**:

Defendants deny the allegations in this paragraph.

173.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations in this paragraph.

174.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations in this paragraph.

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.    Enter judgment in the Plaintiff's favor and against University Defendants for their violations of § 1983; and

B.    Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.    Award the Plaintiff compensatory damages under § 1983 for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.    Award the Plaintiff prejudgment interest on his damages award; and

E.      Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.      Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G of the "WHEREFORE" paragraph set forth above.

## COUNT III, ILLINOIS CIVIL RIGHTS ACT RETALIATION

Violation of 740 ILCS 23 *et seq.*, Retaliation, Plaintiffs ROSALES, BOATNER, FLOWERS, MCCURRY against ALL DEFENDANTS

175.    Plaintiffs hereby incorporate paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.

176.    Plaintiffs engaged in protected activity when they expressly opposed Defendant University's discriminatory practices, and made charges regarding discriminatory treatment both to University leadership and to the EEOC.

**ANSWER**:

Defendants deny the allegations in this paragraph.

177.    As a result of this opposition to these discriminatory practices and participation in protected activity, Plaintiffs suffered adverse employment actions.

**ANSWER**:

Defendants deny the allegations in this paragraph.

178.    Defendants' retaliatory actions of subjecting Plaintiffs to adverse employment actions violated the Illinois Civil Rights Act.

**ANSWER**:

This paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

179.    Defendants' response to Plaintiffs' opposition to, and complaints of, Defendants' proscribed discriminatory practices, served to have a chilling effect to complaints of discrimination.

**ANSWER**:

Defendants deny the allegations in this paragraph.

180.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations in this paragraph.

181.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations in this paragraph.

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.      Enter judgment in the Plaintiff's favor and against University Defendants for their violations of the Illinois Civil Rights Act; and

B.      Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.      Award the Plaintiff compensatory damages under the Illinois Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.      Award the Plaintiff prejudgment interest on his damages award; and

E.      Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.      Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G of the "WHEREFORE" paragraph set forth above.

## COUNT IV

Violation of 42 USC § 2000(e) *et seq*. ("Title VII"), Disparate Treatment, Failure to Promote, Plaintiffs ROSALES, FLOWERS, MCCURRY against UNIVERSITY DEFENDANTS

182.    Plaintiffs hereby incorporates paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.

183.    University Defendants and their agents discriminated against Plaintiffs in violation of their rights under Title VII when they failed to promote them because of their race, color and national origin.

**ANSWER**:

Defendants deny the allegations in this paragraph.

184.    Defendants regularly and in specific instances failed to promote Plaintiffs while promoting similarly situated white colleagues of Plaintiffs, as alleged in the paragraphs above and incorporated herein.

**ANSWER**:

Defendants deny the allegations in this paragraph.

185.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations in this paragraph.

186.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations in this paragraph.

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.    Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Title VII of the Civil Rights Act; and

B.    Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.    Award the Plaintiff compensatory damages under Title VII of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.    Award the Plaintiff prejudgment interest on his damages award; and

E.    Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.    Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and
just.

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G
of the "WHEREFORE" paragraph set forth above.

## COUNT V

Violation of 42 USC § 1983, Disparate Treatment, Failure to Promote, Plaintiffs
ROSALES, FLOWERS, MCCURRY against INDIVIDUAL DEFENDANTS

187.    Plaintiffs hereby incorporates paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.[4]

188.    This Count is brought against the University Defendants and the individual
defendants in their official capacity.

**ANSWER**:

Defendants deny the allegations in this paragraph.

189.    The University Defendants are a public body and the individual defendants were at
all times relevant their employees.

**ANSWER**:

Defendants deny the allegations in this paragraph.

190.    Defendants discriminated against Plaintiffs in violation of their rights under 42
USC § 1983 guaranteeing equal protection under the law when they failed to promote them
because of their race, color and national origin.

**ANSWER**:

Defendants deny the allegations in this paragraph.

---

[4] The Court's August 6, 2019 Order dismissed claims for damages against the individual defendants, leaving
only potential claims for prospective injunctive relief.  In addition, the Court dismissed this claim as to the
University Defendants.

191.    Defendants regularly and in specific instances failed to promote Plaintiffs while promoting similarly situated white colleagues of Plaintiffs, as alleged in the paragraphs above and incorporated herein.

**ANSWER**:

Defendants deny the allegations in this paragraph.

192.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations in this paragraph.

193.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations in this paragraph.

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.      Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Section 1983 of the Civil Rights Act; and

B.      Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.      Award the Plaintiff compensatory damages under Section 1983 of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.      Award the Plaintiff prejudgment interest on his damages award; and

E.      Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.      Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G of the "WHEREFORE" paragraph set forth above.

## COUNT VI

Violation of the Illinois Civil Rights Act, 740 ILCS 23/ *et seq*., Disparate Treatment,
Failure to Promote, Plaintiffs ROSALES, FLOWERS, MCCURRY against
UNIVERSITY DEFENDANTS

194.    Plaintiffs hereby incorporate paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.

195.    Defendants discriminated against Plaintiffs in violation of their rights under the Illinois Civil Rights Act when they failed to promote them because of their race, color and national origin.

**ANSWER**:

Defendants deny the allegations in this paragraph.

196.    Defendants regularly and in specific instances failed to promote Plaintiffs while promoting similarly situated white colleagues of Plaintiffs, as alleged in the paragraphs above and incorporated herein.

**ANSWER**:

Defendants deny the allegations in this paragraph.

197.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal

to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations in this paragraph.

198.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations in this paragraph.

WHEREFORE, the Plaintiffs pray that this Honorable Court:

A.    Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Illinois Civil Rights Act; and

B.    Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.    Award the Plaintiff compensatory damages under the Illinois Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.    Award the Plaintiff prejudgment interest on his damages award; and

E.    Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.    Award the Plaintiff his reasonable costs and attorneys' fees; and

G.    Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G of the "WHEREFORE" paragraph set forth above.

## COUNT VII

Violation of 42 USC § 2000(e) *et seq.*, Disparate Treatment, Discriminatory Pay Raises, Plaintiffs BOATNER and ROSALES against UNIVERSITY DEFENDANTS

199.    Plaintiffs hereby incorporate paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.

200.    University Defendants violated Plaintiffs' rights when they discriminated against them in discriminatorily denying them raises.

**ANSWER**:

Defendants deny the allegations in this paragraph.

201.    Similarly situated white colleagues in the same departments received raises and larger raises than Plaintiffs despite equivalent performance.

**ANSWER**:

Defendants deny the allegations of this paragraph.

202.    University Defendants denial of raises to the Plaintiffs were discriminatory in nature.

**ANSWER**:

Defendants deny the allegations of this paragraph.

203.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations of this paragraph.

204.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations of this paragraph.

WHEREFORE, the Plaintiffs prays that this Honorable Court:

A.    Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Title VII of the Civil Rights Act; and

B.    Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.    Award the Plaintiff compensatory damages under Title VII of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.    Award the Plaintiff prejudgment interest on his damages award; and

E.    Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.    Award the Plaintiff his reasonable costs and attorneys' fees; and

G.    Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G of the "WHEREFORE" paragraph set forth above.

## COUNT VIII

Violation of 42 USC § 1983, Disparate Treatment, Discriminatory Pay Raises, Plaintiffs BOATNER and ROSALES against ALL DEFENDANTS

205.    Plaintiffs hereby incorporates paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.

206.    University Defendants violated Plaintiff's rights under 42 USC Section 1983 when they discriminated against them in denying them raises.[5]

**ANSWER**:

Defendants deny the allegations in this paragraph.

207.    Similarly situated white colleagues in the same department received raises and larger raises than Plaintiffs despite equivalent performance. University Defendants denial of raises to Plaintiffs were discriminatory in nature.

**ANSWER**:

Defendants deny the allegations of this paragraph.

208.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, have suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations of this paragraph.

209.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and

---

[5] Pursuant to the Court's August 6, 2019 order, Defendants Garrett and Barcus are dismissed from Count VIII.  In addition, the University Defendants were dismissed from this Count.

benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations of this paragraph.

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.      Enter judgment in the Plaintiff's favor and against University Defendants for their violations of § 1983 of the Civil Rights Act; and

B.      Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.      Award the Plaintiff compensatory damages under § 1983 of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.      Award the Plaintiff prejudgment interest on his damages award; and

E.      Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.      Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G of the "WHEREFORE" paragraph set forth above.

## COUNT IX

Violation of the Illinois Civil Rights Act, Disparate Treatment, Discriminatory Pay Raises, Plaintiffs BOATNER and ROSALES against UNIVERSITY DEFENDANTS

210.      Plaintiffs hereby incorporates paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.

211.    University Defendants violated Plaintiff's rights when they discriminated against them in denying them raises.

**ANSWER**:

Defendants deny the allegations in this paragraph.

212.    Similarly situated white colleagues in the same department received raises and larger raises than Plaintiffs despite equivalent performance.

**ANSWER**:

Defendants deny the allegations of this paragraph.

213.    University Defendants denial of raises to Plaintiffs were discriminatory in nature.

**ANSWER**:

Defendants deny the allegations of this paragraph.

214.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiffs have sustained damages equal to lost monetary damages, has suffered substantial embarrassment and damage to their professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations of this paragraph.

215.    The Defendants' unlawful conduct, as alleged above, caused Plaintiffs substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiffs will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations of this paragraph.

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.      Enter judgment in the Plaintiff's favor and against University Defendants for their violations of the Illinois Civil Rights Act; and

B.      Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.      Award the Plaintiff compensatory damages under the Illinois Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.      Award the Plaintiff prejudgment interest on his damages award; and

E.      Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.      Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G of the "WHEREFORE" paragraph set forth above.

## COUNT X

Violation of 42 USC § 2000(e) *et seq*., Failure to Train, Plaintiff ROSALES against
UNIVERSITY DEFENDANTS

216.    Plaintiffs hereby incorporates paragraphs 1-160 above as re-plead herein.

**ANSWER**:

Defendants incorporate by reference each of the foregoing answers.

217.    University Defendants and their agents discriminated against Plaintiffs in violation of his rights under 42 USC § 2000(e) when they failed to train him because of his race, color and national origin.

**ANSWER**:

Defendants deny the allegations in this paragraph.

218.    Similarly situated white colleagues in Plaintiff's department received the trainings that Plaintiff was denied.

**ANSWER**:

Defendants deny the allegations of this paragraph.

219.    As a direct and proximate result of one or more of the above acts of intentional discrimination on the basis of race and/or national origin, Plaintiff has sustained damages equal to lost monetary damages, has suffered substantial embarrassment and damage to his professional reputation and emotional distress damages, and are entitled to compensatory damages, as well as attorneys' fees and costs.

**ANSWER**:

Defendants deny the allegations of this paragraph.

220.    The Defendants' unlawful conduct, as alleged above, caused Plaintiff substantial damages, including but not limited to: loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment. Plaintiff will continue to suffer these damages into the future.

**ANSWER**:

Defendants deny the allegations of this paragraph.

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.    Enter judgment in the Plaintiff's favor and against University Defendants for their violations of Title VII of the Civil Rights Act; and

B.    Award the Plaintiff actual damages suffered, including lost wages and damages; and

C.    Award the Plaintiff compensatory damages under Title VII of the Civil Rights Act for embarrassment, anxiety, humiliation, and emotional distress they have suffered;

D.    Award the Plaintiff prejudgment interest on his damages award; and

E.    Enjoin the Defendants, their officers, agents, employees and anyone acting in concert therewith, from discriminating, harassing and retaliating against the plaintiff and retaliating against the plaintiff and any employee; and

F.    Award the Plaintiff his reasonable costs and attorneys' fees; and

G.      Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**PLAINTIFFS DEMAND TRIAL BY JURY PURSUANT TO FED. R. CIV. P. 8**

**ANSWER**:

Defendants deny that Plaintiffs are entitled to any of the relief requested in Sections A-G of the "WHEREFORE" paragraph set forth above and further deny that Plaintiffs are entitled to a jury trial.

## AFFIRMATIVE DEFENSES

Based on the knowledge and information available to date, Defendants assert the following defenses and reserve the right to assert other defenses or claims when and if they become appropriate and/or available in this action. Defendants do not admit that they have the burden of proof on any of the defenses alleged herein. Defendants designate all denials to the Complaint set forth above as defenses, if necessary, for its full defense of this matter.

1.      The Complaint, and each purported claim for relief alleged therein, is barred to the extent that Plaintiffs failed to timely report or give notice of the allegations upon which they base their Complaint to the University Defendants and/or failed to avail themselves of the University Defendants' internal procedures, means, or methods relating to violations, grievances, complaints, or disputes.

2.      To the extent Plaintiffs allege that any employee of University Defendants acted in an unlawful manner, such conduct, if it occurred, was outside the course and scope of that individual's employment, was not authorized or condoned by University Defendants, and was undertaken without the knowledge or consent of University Defendants. Thus, University Defendants are not liable for any such conduct, if it occurred.

3.     Defendants assert that even if some impermissible motive were a factor in any employment decision concerning Plaintiffs, a claim that Defendants expressly deny, the same decision(s) would have been reached for legitimate business reasons.

4.     The claims of Plaintiffs fail, in whole or in part, because University takes and/or took reasonable steps to prevent and promptly correct any form of discrimination, harassment, retaliation or any other conduct alleged to violate any other applicable law (such alleged discrimination, harassment, retaliation or other alleged unlawful conduct is denied), and Plaintiffs unreasonably failed to avail themselves of University's preventative and/or corrective measures or to otherwise avoid harm, including but not limited to, such measures set forth in University's policies and procedures.

5.     The claims of Plaintiffs are barred to the extent they have failed to mitigate their alleged damages. Alternatively, to the extent that Plaintiffs have mitigated their alleged damages, Defendants are entitled to offset those amounts from any alleged damages.

6.     To the extent that each Plaintiff failed to exhaust his administrative remedies, or otherwise fulfill any pre-suit requisites, each of those unexhausted claims must be dismissed.

7.     Plaintiffs cannot recover under Title VII for any act which occurred more than 300 days before they filed their charges with the Equal Employment Opportunity Commission.

8.     The claims of Plaintiffs are barred to the extent that they are outside of the applicable statute of limitations.

9.     Subject to proof through discovery, some or all of Plaintiffs' claims are barred by the doctrines of estoppel, res judicata, collateral estoppel, quasi-estoppel, and/or equitable estoppel or barred in whole or in part because such claims have been discharged and/or abandoned.

Dated:  September 30, 2019          Respectfully submitted,

By:  /s/ Christopher B. Wilson
      Attorneys for Defendant
      UNIVERSITY OF ILLINOIS; THE
      BOARD OF TRUSTEES OF THE
      UNIVERSITY OF ILLINOIS; and
      MAUREEN BANKS, an individual;
      HEIDI JOHNSON, an individual; CHAD
      GARRETT, an individual; and MARK
      BARCUS, an individual

Christopher B. Wilson
Jon R. Buck
Christopher Lepore
James A. Kilcup
131 South Dearborn Street
Suite No. 1700
Chicago, Illinois 60603-5559
Tel: (312) 324-8400
CWilson@perkinscoie.com
JBuck@perkinscoie.com
CLepore@perkinscoie.com
JKilcup@perkinscoie.com

## CERTIFICATE OF SERVICE

I, Christopher B. Wilson, certify that on Monday, September 30, 2019, a copy of the **DEFENDANTS' ANSWER TO AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may also access this filing through the Court's ECF system.

By: /s/ Christopher B. Wilson